(766 P.2d 819)
No. 61,420

ISRAEL ROWLAND, *Appellant,* v. VAL-AGRI, INC., A TEXAS CORPORA-
TION, VAL-AGRI CORP., *Appellee.*

Opinion filed July 15, 1988.

*Robert A. Levy,* of Garden City, for appellant.

*Bradley A. Stout,* and *James A. Walker,* of Triplett, Woolf & Garretson, of Wichita, for appellee.

Before LARSON, P.J., REES and BRAZIL, JJ.

LARSON, J: Israel Rowland appeals from entry of summary

judgment against him in his action charging Val-Agri, Inc., with retaliatory discharge.

The facts are not disputed. From April 1983 until May 1985, Rowland was employed at Val-Agri's Garden City meat packing plant. On October 22, 1984, Rowland fell from a ladder and shattered his kneecap while performing duties as a blood room operator.

Rowland received medical authorization to return to "light duty" on March 14, 1985, but was restricted from climbing and excessive walking. Because extensive climbing and lifting are required in the blood room and the plant had no light duty available, Rowland did not return to employment at Val-Agri.

Val-Agri has a company policy to terminate employees who have for any reason taken six consecutive months' leave. On May 9, 1985, Rowland was notified by Val-Agri that if he did not return to work, he would be terminated in accordance with this policy. Because Rowland was not capable, and still is not capable, of returning to work at the meat packing plant, his employment was terminated.

Rowland received forty-five weeks of workers' compensation benefits from the date of the accident until July 12, 1985. His pending workers' compensation claim was ultimately settled for $5,700 more than the amount paid in temporary weekly disability payments.

On October 17, 1985, Rowland sued Val-Agri alleging his discharge was wrongful and in retaliation for Rowland's asserting his rights under the workers' compensation law.

After extensive discovery, on February 17, 1987, Val-Agri moved for summary judgment based on the fact that "plaintiff's employment was terminable at will and that plaintiff's termination had no relationship whatsoever to the worker's compensation laws or plaintiff's entitlement to compensation thereunder." Rowland's response, filed March 6, 1987, controverted none of the facts in the original motion.

On April 8, 1987, two days prior to the hearing of oral arguments in the summary judgment motion, Rowland filed with the district court: (1) a motion to amend his petition to include a claim of breach of an implied contract; (2) a motion in limine to exclude all mention of any possible relationship between plain-

tiff's consumption of alcohol and his injury; and (3) a motion for additional time for discovery.

After the hearing on April 10, 1987, the district court granted Val-Agri's motion for summary judgment in a memorandum decision filed April 13, 1987. A journal entry incorporating that decision was filed on April 29. 1987. After a hearing on July 22, 1987, Rowland's April 8 motions and his motion to alter or amend judgment were denied in a journal entry filed August 12, 1987.

Rowland appeals raising two issues: (1) Whether the trial court properly granted Val-Agri's motion for summary judgment, and (2) whether the trial court properly denied Rowland's motions to allow amendment of his petition and for further discovery.

The trial court noted in its memorandum opinion granting summary judgment that there were no controverted facts and Rowland had received full entitlement of workers' compensation benefits. The court reasoned that an employer has no duty to hire or retain an employee who cannot do the work the employer has available.

"Summary judgment may be granted where the 'pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue [of] material fact and that the moving party is entitled to judgment as a matter of law.' [Citation omitted.] In reviewing a grant of summary judgment, an appellate court must read the record in the light most favorable to the party who defended against the motion." *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 530, 739 P.2d 494 (1987).

Despite its previous adherence to the employment-at-will doctrine enumerated in *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976), the Kansas appellate courts in more recent cases have noted the development of other theories which have led to the erosion of the doctrine. See *Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841 (1987), for Chief Justice Prager's comprehensive analysis of the employment-at-will doctrine in Kansas.

This court created a limited public policy exception to the employment-at-will doctrine in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981). Murphy sustained an on-the-job injury and filed a workers' compensation claim. Murphy was offered further employment by the City of Topeka on the condition that he withdraw his compensation claim. When he refused, his employment was terminated. In holding that the discharge of an employee-at-will in retaliation for filing a

workers' compensation claim is actionable in tort in Kansas, our court in *Murphy* reasoned:

"The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

The exception to the employment-at-will doctrine has been explained differently in *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, 684 P.2d 1031 (1984), where the court stated: "in proper circumstances an employee at will (*i.e.*, without a contract for a specific duration) may bring a tort action for *retaliatory discharge* when the termination is based on retaliation constituting a contravention of public policy." 9 Kan. App. 2d at 664.

The most recent holding in this area is found in *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988). *Coleman* cited *Murphy* and overruled earlier cases involving employees covered by a collective bargaining agreement and held "[a] state tort action for retaliatory discharge for filing a workers' compensation claim is a claim for a violation of state public policy independent of a collective bargaining agreement." *Coleman* at 812. The court in *Coleman* determined there was a genuine issue of material fact as to whether the employee had accumulated six attendance infractions before surgery resulting from a work-related injury, but extended the public policy underlying *Murphy* to all employees.

It is Val-Agri's policy to terminate employees who have taken six consecutive months' leave for any reason. Testimony indicated that, including Rowland, six of the twelve people who were terminated under Val-Agri's policies were receiving workers' compensation benefits. Rowland contends this constitutes evidence of retaliatory discharge under *Murphy* and the issue is one of fact precluding summary judgment.

Summary judgment is appropriate when the facts are not in dispute and the only question remaining is one of law. *McKee v. City of Pleasanton*, 242 Kan. 649, 651, 750 P.2d 1007 (1988). In this case, there appears to be no genuine issue of fact before the trial court. "It is not the facts that are in dispute but, rather, the trial court's interpretation and application of the law to the facts."

*McKee* at 651. The remaining question of law herein is whether Val-Agri's actions constitute retaliatory discharge.

The facts of this case are readily distinguishable from those of *Murphy*. Rowland would have been retained had he returned to work within six months and the termination of his workers' compensation claim was not a condition of his reemployment as it was in *Murphy*. The uncontroverted facts in both Val-Agri's Supreme Court Rule 141 (1987 Kan. Ct. R. Annot. 79) statement and Rowland's testimony demonstrate he was not capable of performing the duties of his job at the time of his discharge because of his physical condition. Because of this difference, *Murphy* is not controlling in the present case.

The district court's opinion in *Murphy* which was cited with approval by the Court of Appeals stated:

" 'These laws [workmen's compensation] were a great social and economic step forward in this country and the Court is of the opinion that for an employer to intentionally and wrongfully fire a workman for filing a Workmen's Compensation Claim and proceeding thereon, *when said workman is able to perform his work,* is the basis for a claim in tort and is contrary to the public policy of this state. *This is not to say that an employee who is injured on the job and who has a Workmen's Compensation Claim and is unable to perform the work as a result of the injury cannot be discharged.'* " (Emphasis added.) *Murphy* at 490.

In *Coleman,* the plaintiff employee was terminated due to excess absences and for failing to call in and report absences incurred due to work-related injuries. The Supreme Court held:

"Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state as decided in *Murphy v. City of Topeka.*" 242 Kan. at 816.

While *Coleman* expands the perimeters of the tort of retaliatory discharge, the factual situation herein is substantially different from that in *Coleman* where the plaintiff could return to her job.

If this court allows Rowland to pursue its claim for retaliatory discharge in addition to his workers' compensation remedy, a disabled employee, who has received compensation for a permanent injury and cannot return to employment, will also be able to file an action in tort for retaliatory discharge against his or her former employer if another position cannot be found which the employee can fill. This result is not indicated by either *Murphy* or *Coleman* and would insure two recoveries in every

case where an injured worker was unable to return to his or her former employment. Our holding should in no manner be construed to limit or restrict the decisions in *Murphy* or *Coleman*, for we remain committed to the rule that it is contrary to the public policy of Kansas for an employer to intentionally and wrongfully fire a worker for filing a workers' compensation claim when the worker is able to perform his or her work.

The trial court was correct in its holding there is no evidence of retaliatory discharge as a matter of law in the present case.

Rowland also argues the trial court improperly denied motions to allow amendment of pleadings and for further discovery.

"K.S.A. 60-215 provides that leave to amend 'shall be freely given when justice so requires.' A trial court is given broad discretionary power under 60-215 to permit the amendment of pleadings, and its actions thereto will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party. [Citations omitted.]" *Williams v. Amoco Production Co.*, 241 Kan. 102, 109, 734 P.2d 1113 (1987).

Rowland's motions were filed two days before the hearing on the motion for summary judgment and after thirteen months of discovery. Rowland did not argue discovery was incomplete, nor did he contend breach of contract in his response to the motion for summary judgment. The trial court ruled Rowland's request for additional discovery would have been irrelevant to the controlling issue in this case. We agree with the trial court, although we understand Rowland was attempting to show Val-Agri's employment practices were inherently discriminatory and amounted to the retaliatory discharge of every injured worker who could not return to work within six months. We do not know, nor do we deem it material to this case, the injuries or availability for employment of anyone other than Rowland. There is no abuse of the trial court's discretion and justice did not require Rowland's motions be granted.

Affirmed.