**Elida ROSAS, Plaintiff,**

v.

**IBP, INC., Defendant.**

**Civ. A. No. 94–2004–EEO.**

United States District Court, D. Kansas.

Nov. 29, 1994.

---

John L. Hampton, Glenn B. Brown, Boddington & Brown, Chtd., Kansas City, KS, for plaintiff.

Terri Savely Bezek, John J. Jurcyk Jr., Frank D. Menghini, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Katherine E. Rich, Holman, McCollum & Hansen, P.C., Prairie Village, KS, for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant IBP, Inc.'s Motion for Summary Judgment (Doc. # 25). Plaintiff claims that defendant IBP, Inc. ("IBP") terminated her employment in retaliation for exercising her rights under the Kansas Workers' Compensation Act. Defendant seeks summary judgment, contending the undisputed facts establish that IBP terminated plaintiff for legitimate, non-retaliatory reasons. The court has examined the parties' factual and legal submissions, as well as the applicable law, and is now prepared to rule. For the reasons set forth below, defendant's motion is granted.

I. *Factual Background.*

The following facts constitute the uncontroverted material facts as established pursuant to Federal Rule of Civil Procedure 56 and in accordance with District of Kansas Rule 206(c).

In November 1988, plaintiff, Elida Rosas, was hired to work at IBP's Emporia meat processing plant. From November of 1988 through July 6, 1989, plaintiff performed "regular duty" job assignments. On July 1, 1989, she complained of pain in her left hand and wrist. Plaintiff was taken off her regular duty job and assigned to "light duty" jobs on July 6, 1989.

In September 1989, plaintiff filed a workers' compensation claim in connection with her complaints of hand and wrist pain.

Following her initial complaint to the company on July 1, 1989, plaintiff continued to complain of pain in her left hand and wrist through May 1990, when plaintiff took a pregnancy-related leave of absence. During that time period, plaintiff was treated in the company dispensary and by physicians unaffiliated with the defendant. Plaintiff remained on a pregnancy-related leave of absence until October 4, 1990, when she returned to a light duty job assignment.

On October 30, 1990, plaintiff received medical authorization to return to her regular duty job. Plaintiff refused to return to her regular duty job, and was placed on a leave of absence. She was told to return to work when she felt that she could perform her regular duty job. From October 30, 1990, until January 8, 1992, plaintiff did not return to the IBP plant seeking any type of work, nor did she have any contact with IBP or any of its employees concerning starting back to work.

On March 18, 1991, at a preliminary hearing on her workers' compensation claim, plaintiff testified under oath, through an interpreter, as follows:

Q. Just explain why you can't go back to work at IBP doing the same job that you've been doing.

A. I can't because I'm too hurt. I can't do anything.

On February 28, 1992, at a second preliminary hearing on plaintiff's workers' compensation claim, she testified under oath, through an interpreter, as follows:

Q. Mrs. Rosas, are you able to return to work at this time?

A. No.

Q. Tell us why not.

A. She says the way her hand is she is not able to use that even to open that door, much less to work.

\* \* \* \* \* \*

Q. Do you want them to train you in something that you are able to do?

A. I can't do any type of work at the present. I can't even open and close my hand.

Q. You couldn't return back to the same job at this time?

A. I cannot work.

Q. Okay. You can't work at all?

A. No. I can't open and close my hand. It really hurts.

Plaintiff stated in her deposition in this lawsuit that she testified truthfully at the preliminary hearings.

IBP has a company policy to terminate employees who have for any reason taken twelve consecutive months' leave. IBP terminated plaintiff on January 8, 1992, for violating its Leave of Absence policy.

II. *Standards Governing Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof

that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 206(c).

■ In this diversity case, we ascertain and apply Kansas law with the objective that the result obtained in federal court should be the same result that a Kansas court would reach. *See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

### III. *Discussion.*

■ In Kansas, the employer-employee relationship is governed by the doctrine of employment-at-will. The doctrine holds that in the absence of a contract, express or im- plied, between an employee and her employer covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976). Kansas law recognizes a public policy exception to the employment-at-will doctrine for employees discharged in retaliation for the exercise of their rights under the Workers' Compensation Act. *Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186 (1981).

■ On May 27, 1994, the Kansas Supreme Court answered a certified question posed to it in the case *Ortega v. IBP, Inc.,* Case No. 92–2351. The question was as follows:

> Where an employee-at-will claims that an employer terminated his or her employment in retaliation for the exercise of statutory rights under the Workers' Compensation Act, K.S.A. § 44–501 *et seq.,* and that he or she is therefore entitled to maintain a cause of action for wrongful discharge under Kansas law, is plaintiff required to prove that claim by clear and convincing evidence?

The court, answering in the affirmative, stated:

> A party having the burden of proving a discharge from employment in retaliation for having filed a workers compensation claim must establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature.

*Ortega v. IBP, Inc.,* 255 Kan. 513, 527, 874 P.2d 1188 (1994). In *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980), the court articulated the meaning of clear and convincing evidence:

> [T]he witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.

*Nordstrom,* 227 Kan. at 65, 605 P.2d 545 (citation and quotations omitted). The court

in *Ortega* succinctly stated the requirements of clear and convincing evidence in the following language:

> It is clear if it is certain, unambiguous, and plain to the understanding. It is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it.

*Ortega*, 255 Kan. at 527, 874 P.2d 1188 (citing *Chandler v. Central Oil Corp.*, 253 Kan. 50, 58, 853 P.2d 649 (1993)). Under Kansas law, clear and convincing evidence is not a quantum of proof, but rather a quality of proof. *Ortega*, 255 Kan. at 527, 874 P.2d 1188; *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 448, 827 P.2d 24 (1992).

■ In general, in order to establish a prima facie case of retaliatory discharge, a plaintiff must show (1) that he filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of plaintiff's compensation claim or the fact that he had sustained a work-related injury for which he might file a future claim for benefits; (3) that the employer terminated his employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *See Ortega v. IBP, Inc.*, No. 92–2351, 1994 WL 373887, \*6 (D.Kan. July 1, 1994); *Pilcher v. Board of Co. Commissioners*, 14 Kan.App.2d 206, 213, 787 P.2d 1204 (1990).

■ Once plaintiff presents a prima facie case, the burden of production shifts to defendant to rebut the inference that its motives were retaliatory, by articulating a legitimate, non-retaliatory reason for the discharge.[1] "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, ... [and] drops from the case." *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Texas Dept. of Community Affairs v.*

*Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981)). Plaintiff must then continue with the burden of proving by clear and convincing evidence that the employer acted with retaliatory intent. *See Hicks*, — U.S. at —, 113 S.Ct. at 2749. Ultimately, plaintiff's burden is to show that the discharge was "based on" the exercise of rights under the Workers' Compensation Act. *See Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 147–48, 815 P.2d 72 (1991).

■ Plaintiff contends that IBP terminated her employment in retaliation for having pursued her rights under the Kansas Workers' Compensation Act. In the instant case, in order for plaintiff to establish a prima facie case of retaliatory discharge, plaintiff must show (1) that she filed a claim for workers' compensation benefits; (2) that IBP had knowledge of her claim; (3) that IBP terminated plaintiff's employment; and (4) that a causal connection existed between plaintiff's protected activity and the termination of plaintiff's employment.

Defendant does not dispute that plaintiff has established the first three elements of a prima facie case. Defendant contends, however, that plaintiff has not shown by clear and convincing evidence that she was terminated from employment because she filed a workers' compensation claim, and thus has failed to establish the fourth element of a prima facie case.

Plaintiff responds by stating that IBP's leave of absence policy was used by IBP as a pretext for retaliation against her for filing a workers' compensation claim. Plaintiff, however, fails to provide any evidence, let alone any evidence of a clear and convincing nature, to establish that IBP's decision to terminate plaintiff was based upon her act of filing a workers' compensation claim. Indeed, the only evidence plaintiff offers to demonstrate a causal connection between her

---

1. In its certification opinion, the Kansas Supreme Court noted that Kansas courts utilize the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for discrimination and free speech employment cases. *See, Ortega*, 255 Kan. at 526, 874 P.2d 1188. The court believes that Kansas courts also would apply the McDonnell Douglas analysis to workers' compensation retaliatory discharge cases. This burden-shifting analysis has been applied by at least one federal district court in such a context. *See, e.g., Ortega*, 1994 WL 373887.

protected activity and her termination is the following:

(1) the uncontroverted fact that plaintiff filed a workers' compensation claim while employed at IBP;

(2) plaintiff's uncontroverted deposition testimony wherein she indicates that she sought an attorney regarding her workers' compensation claim prior to IBP placing her on administrative leave of absence;

(3) the uncontroverted testimony of an IBP supervisor, wherein the IBP supervisor acknowledged that workers' compensation claims are greater when an attorney represents the injured employee;

(4) the uncontroverted testimony of another IBP supervisor, wherein the supervisor acknowledged that workers' compensation costs impact upon company profit sharing and bonuses;

(5) the controverted and hearsay testimony of an assistant to an IBP supervisor, where the assistant alleged that an IBP supervisor stated at a meeting that "it cost too much when people got hurt and to make sure that no one got hurt"; and

(6) plaintiff's uncontroverted deposition testimony, wherein she states that she "was not explained anything in Spanish" and did not see any company policies posted "in Spanish."

The foregoing facts simply do not rise to the level of clear and convincing evidence necessary to establish that IBP acted with retaliatory intent. Accordingly, plaintiff has failed to present a prima facie case.

■ Even if plaintiff were able to establish by clear and convincing evidence that a causal nexus existed between her protected activity and her termination, plaintiff's claim of retaliatory discharge would still fail as a matter of law. In *Rowland v. Val–Agri, Inc.*, 13 Kan.App.2d 149, 766 P.2d 819 (1988), the Kansas Court of Appeals ·ruled that an employee, who because of his physical condition was incapable of performing the duties of his job, did not state a cause of action for retaliatory discharge. *Id.* at 154, 766 P.2d 819.

The facts in *Rowland* are similar to those in the case at bar. In *Rowland,* the employer, Val–Agri, had instituted a company policy whereby employees would be terminated after six months consecutive leave for any reason. Five months after Rowland sustained a work-related injury, he received medical authorization to return to "light duty" and was restricted from climbing and excessive walking. Because the plant had no light duty jobs available, and also because Rowland's previous duties required extensive climbing and lifting, Rowland was unable to return to his previous job responsibilities. After Rowland had been absent from his employment for over six months, he was notified he would be terminated pursuant to company policy if he did not return. Because Rowland remained unable to return to the type of work he had performed prior to the accident, he was terminated.

After Rowland filed suit claiming retaliatory discharge for having filed his workers' compensation claim, the district court granted Val–Agri's motion for summary judgment, reasoning that an employer has no duty to hire or retain an employee who cannot do the work the employer has available. On appeal, the Kansas Court of Appeals affirmed, holding that, as a matter of law, the facts did not support a claim for retaliatory discharge. The court noted that the uncontroverted facts established that he was not capable of performing the duties of his job at the time of his discharge because of his physical. condition. *Id.* at 153, 766 P.2d 819. The court observed:

If this court allows Rowland to pursue its [sic] claim for retaliatory discharge in addition to his workers' compensation remedy, a disabled employee, who has received compensation for a permanent injury and cannot return to employment, will also be able to file an action in tort for retaliatory discharge against his or her former employer if another position cannot be found which the employee can fill. This result is not indicated by either *Murphy [v. City of Topeka* 6 Kan.App.2d 488, 630 P.2d 186 (1981) ] or [*Morriss v.] Coleman [Co.,* 241 Kan. 501, 738 P.2d 841 (1987) ] and would insure two recoveries in every case where

an injured worker was unable to return to his or her former employment. *Id.* 13 Kan.App.2d at 153–54, 766 P.2d 819.

Moreover, in *Raymond v. Archer Daniels Midland Co.*, 762 F.Supp. 901 (D.Kan.1991), we held that Kansas law does not prohibit the discharge of an employee who is unable to perform his work at the time of discharge, even if the employee has sustained a work-related injury and filed a workers' compensation claim. In July 1987, Raymond sustained a work-related injury to his left wrist and subsequently filed a workers' compensation claim. After he had been off work for a period exceeding twelve months, Archer Daniels Midland notified Raymond that he was terminated pursuant to the company attendance policy, which allowed for termination of any employee off work for a period of twelve consecutive months. The facts were undisputed that, at the time of his discharge, Raymond was not capable of performing the work for which he had been hired. Under the facts of *Raymond,* we held that the law of Kansas would not recognize a cause of action for retaliatory discharge, and granted summary judgment.

In the instant case, it is uncontroverted that plaintiff did not return to IBP in the fourteen months after she was placed on leave on October 30, 1990. It is also uncontroverted that on March 18, 1991, and on February 28, 1992 (one month after her discharge), plaintiff stated that she was not capable of performing the work for which she had been hired, and indeed, that she was incapable of performing any job. Plaintiff has presented no evidence that she was capable of returning to her "regular duty" work at the time of her termination. We conclude that, under Kansas law, even if plaintiff had presented a prima facie case, her claim would nonetheless fail to state a cognizable cause of action for retaliatory discharge. Accordingly, we grant defendant's motion.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Doc. # 25) is granted.