74 F.3d 1248
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Alicia BARBER, Plaintiff-Appellant,
v.
HALLMARK CARDS, INC. Defendant-Appellee.
 No. 94-3356.
(D.C.No. 93-4087-SAC).
 United States Court of Appeals, Tenth Circuit.
 Jan. 19, 1996.
 
 ORDER AND JUDGMENT*
 Before BRISCOE and MURPHY, Circuit Judges and JENKINS,** Senior District Judge.
 MURPHY, Circuit Judge.
 
 
 1
 Plaintiff brought this action for retaliatory discharge and intentional infliction of emotional distress, alleging that she was terminated by defendant for seeking workers' compensation benefits. The district court granted defendant's motion for summary judgment on the grounds that plaintiff was discharged not for filing a workers' compensation claim, but because her permanent medical restrictions prevented her from performing any available job for the defendant. This court agrees.
 
 
 2
 Plaintiff Alicia Barber began production work for defendant Hallmark Cards on January 22, 1990. That spring, when the department in which she had been working was phased out, Barber applied for and was placed in the position of card scrap operator. This position involved separating greeting cards from perforated sheets with a rubber mallet. Shortly thereafter, Barber reported to the company nurse complaining of soreness in her wrists. In response, Barber was placed on "light duty." Light duty consisted of temporary assignments which did not require as much repetitive motion of the hands and wrists. In September 1990, Barber was offered a transfer to a position as card packager, which Hallmark believed would be less stressful to her injuries.
 
 
 3
 When her symptoms did not improve and the company nurse denied her request to be referred to a physician, Barber consulted an attorney. Thereafter, her attorney initiated a workers' compensation proceeding on her behalf. In response to the orders of her physician, Dr. Hoffman, Hallmark placed Barber on restricted light duty work from November 20, 1990 through January 9, 1991. This work consisted of temporary responsibilities, performed a total of one hour per day, such as sweeping, assembling scheduling information, counting cards, opening packages, and checking the quality of cards. During this period, Barber was paid full-time wages.
 
 
 4
 Her condition improved and Dr. Hoffman released her for regular duty on January 10, 1991. Barber's symptoms recurred and, based on new orders from Dr. Hoffman, Barber was again placed on light duty, this time answering the phone for one-half hour a day. Barber improved and Dr. Hoffman released her to return to four-hour days of regular duty. Her symptoms again returned and, on April 5, 1991, Dr. Hoffman issued permanent restrictions against Barber's repetitive use of her hands, wrists, and elbows, and specifically against "keyboard activity." Barber returned to work the following week.
 
 
 5
 Between April 8, 1991, when she returned to work full-time, and April 15, 1991, her last day of work at Hallmark, Barber worked only three and one-half days. She took vacation and voluntary leave the rest of the time. For two days Barber was assigned light duty placing names on a magnetic board and affixing stickers. She spent the third day making box labels and coaching another employee through keyboard procedures. On her last half-day of work at Hallmark, Barber swept the floor, dusted equipment, and laid tape. On April 17, 1991, in response to Barber's objections to these light duty tasks, Bud Anderson, Hallmark's Human Resources Director, offered Barber the choice of tendering her resignation or being terminated. Anderson subsequently told Barber that her termination would be recorded as "released."
 
 
 6
 Plaintiff's diversity claims sought recovery for retaliatory discharge and intentional infliction of emotional distress. Following discovery, both parties filed summary judgment motions and supporting memoranda. In paragraph ten of an affidavit attached to her reply brief, Barber for the first time testified that on the day of her termination Anderson told her Hallmark had many jobs available which she could perform. This statement directly contradicted her earlier deposition testimony in which she testified that Anderson told her there were no jobs available within her restrictions.
 
 
 7
 The district court granted defendant's motion for summary judgment, holding that portions of Barber's affidavit, including paragraph ten, represented an attempt to create a "sham fact issue" and therefore did not create a genuine issue of material fact. Plaintiff appeals the district court order striking portions of her affidavit and granting summary judgment to defendant on her retaliatory discharge claim.
 
 
 8
 Barber first argues that the district court erred by granting Hallmark's motion to strike pertinent parts of her affidavit. In her opening and reply briefs on appeal, Barber only refers to paragraph ten of her affidavit. Consequently, this court's review is limited to the issue of whether the district court erred by striking paragraph ten of her affidavit.
 
 
 9
 The admissibility of an affidavit submitted on summary judgment is an evidentiary question. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 894-95 (1990). Such evidentiary rulings are reviewed under an abuse of discretion standard. Boughton v. Cotter Corp., 65 F.3d 823, 832 (10th Cir.1995). Accordingly, the district court's decision to strike portions of Barber's affidavit will not be disturbed unless this court is left with "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 10
 In considering a motion for summary judgment, the district court may disregard an affidavit that conflicts with the affiant's prior deposition testimony if the conflicting affidavit represents "an attempt to create a sham fact issue." Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986). The factors relevant to the existence of a sham fact issue include: whether the affiant was cross-examined or subject to cross-examination during her earlier testimony; whether the affiant had access to the pertinent evidence at the time of her earlier testimony or whether the affidavit was based on newly-discovered evidence; and whether the earlier testimony reflects confusion which the affidavit attempts to explain. Rios v. Bigler, 67 F.3d 1543, 1551-52 (10th Cir.1995); Franks, 796 F.2d at 1237.
 
 
 11
 Barber urges that she was not cross-examined at her deposition. Her attorney, however, was present and had the opportunity to cross-examine her, although he chose not to. The opportunity for cross-examination, even if not exercised, is a factor weighing in favor of the district court's order striking portions of plaintiff's affidavit. Barber further argues that her affidavit was intended to reference availability of short-term jobs while her deposition testimony was intended to reference availability of long-term jobs. Neither her deposition testimony nor her affidavit, however, specify short-term or longterm positions. Each is unequivocal, the former indicating Hallmark's Anderson did not state there were jobs available and the latter indicating the opposite. During the deposition, she testified on three occasions that Anderson told her there were no jobs available within her restrictions. Under these circumstances, it cannot be said that Barber's deposition reflects confusion which her later affidavit attempts to explain. Consequently, the district court did not abuse its discretion when it struck portions of Barber's affidavit as an attempt to create a sham fact issue.
 
 
 12
 Barber next argues that the district court improperly granted summary judgment to defendant on her retaliatory discharge claim. This court reviews the district court's entry of summary judgment de novo, applying the same legal standard used by the district court. Schusterman v. United States, 63 F.3d 986, 989 (10th Cir.1995). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 13
 Under Kansas law, an employee may bring an action for retaliatory discharge if the employer discharges the employee in retaliation for filing a workers' compensation claim or for absences due to a work-related injury. Coleman v. Safeway Stores, Inc., 752 P.2d 645, 652 (Kan.1988); Murphy v. City of Topeka, 630 P.2d 186, 193 (Kan.Ct.App.1981). Kansas law, however, does not require an employer to retain an employee who, as a result of a work-related injury, is physically unable to perform any available job of the employer. Rowland v. Val-Agri, Inc., 766 P.2d 819, 820 Syl. p 4 (Kan.Ct.App.1988). The Kansas Court of Appeals in Rowland held:
 
 
 14
 When a discharged employee is not capable of performing the duties of his or her job because of a work-related injury and the termination of that employee's workers' compensation claim is not a condition of his or her reemployment, but another position cannot be found which the employee can fill, the employee does not have a tort action for retaliatory discharge against his or her former employer.
 
 
 15
 Id. The availability of jobs for which the employee is qualified is therefore essential to the employee's retaliatory discharge claim.
 
 
 16
 Barber contends that there were jobs available at Hallmark for which she was qualified. She argues that certain deposition testimony of her supervisor, William Thornton, and Hallmark's Human Resources Director, Bud Anderson, creates a genuine issue of material fact precluding summary judgment. Upon careful review of the record, the court is satisfied that the statements upon which Barber relies are taken out of context and do not raise a genuine issue of material fact.
 
 
 17
 We AFFIRM the district court order striking paragraph ten of plaintiff's affidavit and granting summary judgment to defendant.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of order and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 **
 Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation