NOT DESIGNATED FOR PUBLICATION

No. 119,936

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHANNON M. SHOEMAKER,
*Appellant*,

v.

PLASTIC PACKAGING TECHNOLOGIES, L.L.C.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; TIMOTHY L. DUPREE, judge. Opinion filed June 21, 2019. Affirmed.

*Albert F. Kuhl*, of Law Offices of Albert F. Kuhl, of Lenexa, for appellant.

*Kerri S. Reisdorff* and *Elizabeth E. Tobin*, of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., of Kansas City, Missouri, for appellee.

Before GARDNER, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Shannon M. Shoemaker appeals the district court's grant of summary judgment in favor of her previous employer, Plastic Packaging Technologies, L.L.C. (PPT) on Shoemaker's retaliatory termination claim. Finding no error, we affirm.

*Factual and procedural background*

Shoemaker worked for PPT for five years as an adjuster, also known as a machine operator. Adjusters operate high-speed bagging machines which produce flexible plastic

1

packaging. Adjusters are required to perform a number of physical tasks, including frequently lifting, standing, bending, flexing, and stretching.

While working for PPT, Shoemaker told Robert Perkins (PPT's human resources director) that she had been electrocuted by a machine three weeks earlier. Perkins immediately authorized medical care for Shoemaker and sent her to the hospital. There, Shoemaker received treatment from two different doctors. Both released her to work without restrictions on August 11, 2014. Soon after being released, Shoemaker filed a workers compensation claim.

Shoemaker contacted Perkins on August 13 and told him she disagreed with the doctors and was not able to return to work. Perkins responded that Shoemaker could apply for protected leave under PPT's Family Medical Leave Act (FMLA) policy. Perkins also directed Shoemaker to PPT's short-term disability policy. Perkins emailed information regarding both policies to Shoemaker the same day.

Eventually, Shoemaker sent PPT a medical certification from her physician stating that Shoemaker was unable to work from August 6 to October 13. PPT approved Shoemaker's requested leave for those dates.

Shortly before her leave was to expire on October 13, Shoemaker contacted PPT and said she would not be returning to work until November 13. So, Perkins again requested that Shoemaker send an updated FMLA certification showing that she remained unable to work. Perkins repeatedly tried, although unsuccessfully, to contact Shoemaker via phone and email to get her updated information. Finally, Perkins reached Shoemaker by phone on November 7.

On November 7, Shoemaker told Perkins that she was still unable to work but had a medical appointment on December 3. Perkins told Shoemaker that he would extend her

2

deadline to submit her medical information to December 4. But Shoemaker again failed to respond to Perkins when he tried to get her updated medical information. And she admittedly made no attempt to communicate with Perkins from November 13 to December 12. PPT fired Shoemaker on December 12, citing her lack of communication and lack of verifiable excuse for her absences from work.

In the spring of 2015, Shoemaker applied for full disability benefits with the Social Security Administration (SSA). In her application, Shoemaker represented that she had been unable to perform "any type of work" since August 6, 2014. Shoemaker told the SSA that PPT adjusters were required to "frequently" lift up to 25 pounds and were also required to lift up to 100 pounds. She explained that she was restricted to lifting only 5-10 pounds and had extremely restricted use of her right arm. Shoemaker again claimed that she could not work in any capacity in her spring 2016 SSA benefits application.

Shoemaker settled her workers compensation claim for $20,000 in December 2015. The terms of the agreement included statements that it was a "full and final settlement of all issue[s] in all jurisdictions" and that it "resolve[d] any and all claims against [PPT]." During that settlement hearing, Shoemaker told the Administrative Law Judge that she was unable to work.

Shoemaker filed this lawsuit claiming retaliatory discharge in December 2016. PPT moved for summary judgment, arguing: (1) Shoemaker's lawsuit was barred by her admissions that she could not perform the essential functions of her job at PPT; (2) Shoemaker could not establish a prima facie case of retaliatory discharge or rebut the legitimate reason PPT fired her; and (3) Shoemaker's settlement agreement barred her from bringing the lawsuit because it settled all issues in all jurisdictions and resolved all claims against PPT. Shoemaker responded that with physical accommodations for the more strenuous duties, specifically lifting, she might have returned to work at PPT, and that she had properly established a case of retaliatory discharge.

3

The district court granted PPT's motion for summary judgment. It found that Shoemaker's admissions regarding her inability to work barred her retaliatory discharge claim and that her settlement agreement collaterally estopped her from bringing that claim. Shoemaker timely appeals.

*Did the district court err in granting summary judgment?*

Shoemaker argues that the district court erred in granting PPT's motion for summary judgment because a genuine issue of material fact exists as to Shoemaker's ability to perform work for PPT after her injury.

*Our standard of review*

Our review of the district court's decision is well-settled:

> "'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

We review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to Shoemaker—the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the

4

evidence'—in other words, if there is a genuine issue about a material fact—summary judgment should be denied.' [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

*Proving retaliatory discharge*

Kansas has long adhered to an employment-at-will doctrine, which holds that absent an express or implied contract employees and employers may terminate an employment relationship at any time for any reason. *Campbell v. Husky Hogs, L.L.C.*, 292 Kan. 225, 227, 255 P.3d 1 (2011). Some exceptions to this rule are statutory, such as terminations based on race, gender, or disability. See K.S.A. 44-1009 (making it unlawful for an employer to discriminate against a person because of race, religion, color, sex, disability, national origin, or ancestry). And other exceptions to this rule arise from public policy. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 176, 872 P.2d 252 (1994). So, for example, an employee-at-will may not be terminated in retaliation for having filed a workers compensation claim, *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495-97, 630 P.2d 186 (1981), or for "whistle-blowing," *Palmer v. Brown*, 242 Kan. 893, 900, 752 P.2d 685 (1988).

Our Supreme Court in *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 272 Kan. 546, 35 P.3d 892 (2001), laid out the burden-shifting analysis applicable to workers compensation retaliatory discharge cases:

> "'The burden "is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for

5

discrimination.'"" 272 Kan. at 552-53 (quoting *Woods v. Midwest Conveyor Co.,* 231 Kan. 763, Syl. ¶ 2, 648 P.2d 234 [1982]).

*Shoemaker's prima facie case*

To establish a prima facie case of retaliatory discharge, Shoemaker had the initial burden to show that:  (1) she "filed a claim for workers compensation benefits or sustained an injury for which . . . she might assert a future claim for such benefits"; (2) PPT had knowledge of her workers compensation claim; (3) PPT terminated her employment; and (4) a causal connection existed between the protected activity or injury and the termination. *Rebarchek*, 272 Kan. at 554.

That Shoemaker meets the first three factors is uncontested, but the parties do not squarely address the fourth—a causal connection. Employers rarely admit to retaliatory intent, and plaintiffs must ordinarily rely on circumstantial evidence to prove a prima facie case of retaliatory discharge. *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540, 840 P.2d 534 (1992). Close temporal proximity between the claim and discharge is a typical beginning point for proof of a causal connection and may be "'highly persuasive evidence of retaliation.' [Citation omitted.]" *White v. Tomasic*, 31 Kan. App. 2d 597, 602, 69 P.3d 208 (2003).

> "Proximity in time between the claim and discharge is a typical beginning point for proof of a causal connection. *Marinhagen v. Boster, Inc.,* 17 Kan. App. 2d 532, 540, 840 P.2d 534 (1992). Showing proximity in time, however, is not the sole means of showing a causal connection. The Tenth Circuit has held that unless the employer's adverse action is closely connected in time to the protected conduct, the claimant will need to produce additional evidence in order to show a causal connection. *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999). Citing *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir. 1996), *cert. denied* 518 U.S. 1019, the Court of Appeals observed that a plaintiff in Rebarchek's position 'can avoid summary judgment by showing a pattern of

retaliatory conduct stretching from the filing of a workers compensation claim to termination.' 28 Kan. App. 2d at 111." *Rebarchek*, 272 Kan. at 555.

Shoemaker's injury occurred on an unspecified date in July or August 2014 and she was terminated on December 12, 2014—around four months later. She filed her workers compensation claim on another unspecified date about three weeks after her injury, so perhaps three months separated her protected act from her termination. But cases confirm that this length of time is too long to support an inference of causation or retaliatory motive on its own.

> "To establish a causal connection, a plaintiff must 'present evidence of circumstances that justify an inference of retaliatory motive.' *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (internal quotation marks omitted). 'If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection.' *Id.* However, a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Thus, where a gap of three months or longer has occurred, a plaintiff must present other evidence—'"more than mere speculation, conjecture, or surmise"'—to establish that her protected activity was a but-for cause of the adverse employment action. *Ward*, 772 F.3d at 1203 (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 [10th Cir. 2004]); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)." *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019).

See also *Sutherland v. Goodyear Tire & Rubber Co.,* 446 F. Supp. 2d 1203, 1214 (D. Kan. 2006) (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 [10th Cir. 1997] ) (three months between protected activity and termination by itself was too remote in time to prove causal connection); *Meiners v. University of Kansas,* 359 F.3d 1222, 1231 (10th Cir. 2004) (two-and-a-half-to-three-month gap was too long on its own to prove causation).

The three-month gap between Shoemaker's protected act and her termination is too long to support an inference of retaliatory termination. And Shoemaker shows no pattern of retaliatory conduct or other evidence of intent, as is necessary here. See *Rebarchek*, 272 Kan. at 555. She thus fails to make a prima facie case of retaliatory termination.

*PPT's legitimate, nondiscriminatory reason*

But even assuming that Shoemaker had made a prima facie case, PPT has met its burden to present a facially nonretaliatory reason for Shoemaker's termination. That reason was that Shoemaker failed to attend work or submit adequate paperwork showing the need to extend her leave, contrary to PPT's policy. And after PPT took Shoemaker's deposition, it also argued that Shoemaker's inability to return to work foreclosed her retaliatory discharge claim. See *Rowland v. Val-Agri, Inc.*, 13 Kan. App. 2d 149, 154, 766 P.2d 819 (1988) ("[W]e remain committed to the rule that it is contrary to the public policy of Kansas for an employer to intentionally and wrongfully fire a worker for filing a workers' compensation claim when the worker is able to perform his or her work."); *Griffin v. Dodge City Cooperative Exchange*, 23 Kan. App. 2d 139, 148-49, 927 P.2d 958 (1996) (finding "the public policy creating the tort of retaliatory discharge does not *require* employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position"). This is sufficient to meet PPT's burden and to shift to Shoemaker the burden to show that PPT's stated reasons were merely a pretext for retaliation.

*Shoemaker fails to show pretext.*

Shoemaker tries to show pretext by pointing to the timing of PPT's decision to terminate her—"a day before her last leave request was to run out." But Shoemaker admittedly failed to support that leave request with proper documentation regarding her

8

injury status. Shoemaker does not explain how, in light of that fact, the timing of events suggests that PPT's stated reasons are pretextual.

Shoemaker also relies on outdated caselaw—*Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 816, 752 P.2d 645 (1988), *disapproved of by Gonzalez-Centeno v. North Central Kansas Regional Juvenile Detention Facility*, 278 Kan. 427, 101 P.3d 1170 (2004). In *Coleman*, our Supreme Court found that "[a]llowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim." 242 Kan. at 816.

But the Supreme Court overruled Coleman's liability rule in *Gonzalez-Centeno v. North Central Kansas Regional Juvenile Detention Facility*, 278 Kan. 427, 101 P.3d 1170 (2004). There, our Supreme Court unequivocally held that the broad liability language in *Coleman* no longer reflected current law. 278 Kan. at 434. Our Supreme Court also found that "[w]hether an employer's discharging an employee for failing to call in an anticipated absence that results from a work-related injury gives rise to liability is a question of fact. Language to the contrary in *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, Syl. ¶ 3, 752 P.2d 645 (1988), is disapproved." 278 Kan. 427, Syl. ¶ 4. Our Supreme Court also noted: "It has long been recognized that *Coleman* does not prohibit discharge of an employee who is unable to perform his or her work at the time of discharge, even if the inability to work was due to a work-related injury." 278 Kan. at 436. Shoemaker's reliance on *Coleman* is thus misplaced.

*Shoemaker fails to show a material question of fact regarding her ability to work.*

Shoemaker's primary claim is that PPT violated the law in terminating her while she was still receiving treatment, before any determination could be made regarding her ability to work. See *Sanjuan v. IBP, Inc.*, 90 F. Supp. 2d 1208, 1212 (D. Kan. 2000), *aff'd*

275 F.3d 1290 (10th Cir. 2002) (finding where an employer terminates an injured employee after only a brief period for recovery has elapsed, courts have generally found the employee has stated a cognizable cause of action for retaliatory termination). In other words, because PPT failed to give her sufficient time to recover, its termination was retaliatory. But the record shows that Shoemaker repeatedly admitted that she was unable to perform the tasks necessary to work for PPT. See *Castro v. IBP, Inc.*, No. 96-1210-JTM, 1997 WL 624972, at *5 (D. Kan. 1997) (unpublished opinion) (employee with no medical restrictions at the time of discharge, who admitted that she could not perform her job, could not sustain a retaliation claim). Only after Shoemaker was deposed in this case did she file a declaration that muddies the water about her ability to work. She asserts that her declaration creates a genuine issue of material fact regarding her ability to work. We disagree.

In her brief in opposition to PPT's motion for summary judgment, Shoemaker admitted the pertinent material facts. She admitted that a job as an adjuster requires various physical requirements, including lifting, standing, bending, flexing, and reaching; adjusters must frequently lift 25 pounds and occasionally lift 100 pounds. Shoemaker told PPT that she could not physically perform the necessary work from August to December 2014, and that she did not perform any work for PPT. In her interrogatory response, Shoemaker stated: "My health condition(s) have le[]d me to the conclusion that the physical work I previously held can no longer be performed by my body." Similarly, during her deposition, Shoemaker testified that she was unable to perform any work through 2015 and 2016. Shoemaker also admittedly stated in her 2015 and 2016 applications for SSA benefits that she could not perform "any type of work" since August 2014. Finally, Shoemaker admitted that she received SSA benefits after the SSA found she was unable to perform any type of work.

Shoemaker later claimed, in her summary judgment response, that it was "conceivable she could have returned to work at PPT" if she were given physical

10

accommodations for the more strenuous duties, "specifically lifting." Shoemaker supported that assertion with her declaration under penalty of perjury, which has the same effect as an affidavit. See K.S.A. 53-601. The declaration, dated January 2018, stated in pertinent part:

> "I believe that I could have performed work at PPT over the past several years, subsequent to my termination in December, 2014, provided that the company offered me appropriate accommodations for some of my limitations physically, especially my lifting limitations. I was never given the opportunity to discuss this possibility with PPT, as the company terminated me before any such discussion could occur."

Our Supreme Court has held: "An affiant cannot use an affidavit to controvert the affiant's prior sworn statement in order to create an issue of material fact to defeat a motion for summary judgment." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, Syl. ¶ 4, 756 P.2d 416 (1988). A party cannot avoid summary judgment by filing a subsequent affidavit that impeaches prior deposition testimony. *Smith v. Kansas Orthopaedic Center*, 49 Kan. App. 2d 812, 818, 316 P.3d 790 (2013). A sham affidavit in that context is one created to contradict information found in previous sworn statements. See *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 45-46, 661 P.2d 348 (1983). A court should not consider a sham affidavit and may strike it. See *Bacon*, 243 Kan. at 313-14; *Mays*, 233 Kan. at 47.

At first blush, Shoemaker's declaration appears to contradict her deposition testimony and other statements and thus is just like a sham affidavit. But upon a closer reading, we believe that Shoemaker's declaration appears to have been carefully tailored to avoid contradicting her previous statements that she was not able to work in any capacity at PPT. We must read all of Shoemaker's statements in the light most favorable to her. Her January 2018 declaration that she believes she could have performed work at PPT over the past several years *if* she had appropriate accommodations does not squarely contradict her statements in 2015-2017 that she was not able to work at PPT. Because she had not requested reasonable accommodations and PPT had no duty under the workers

compensation laws to offer them, we read Shoemaker's 2015-2017 statements to mean that she was not able to work at PPT *without accommodations*. So we do not find her declaration contradicts her prior testimony or constitutes a sham affidavit that we must ignore.

Nevertheless, Shoemaker's declaration fails to create a genuine issue of material fact as to her ability to work. Mere speculation is insufficient to avoid summary judgment. *Unified Gov't of Wyandotte County v. Trans World Transp. Svcs.*, 43 Kan. App. 2d 487, 490, 227 P.3d 992 (2010). And Shoemaker's declaration is nothing but speculation. Shoemaker's subjective "belie[f]" that it was "conceivable" she could have continued working for PPT if "appropriate accommodations" were made is akin to arguing that something may develop later during discovery or at trial to show that she could have continued working for PPT under some unforeseeable circumstances. Her declaration fails to create a genuine issue of material fact. See *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013) (a party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial).

*PPT is justified in relying on Shoemaker's statements of her inability to work.*

Shoemaker next argues that PPT's reliance on her statements is insufficient evidence of her inability to work. She suggests that PPT could not rely on her statements of her inability to work because she did not make the statements, and thus PPT did not discover them, until after she was terminated. But this assertion is factually inaccurate, in part, as PPT terminated Shoemaker because she had told PPT she could not work yet she failed to support that claim with the required medical certification.

Shoemaker's deposition testimony is the crucial prior statement here, because it was sworn. And that testimony was made after Shoemaker was terminated. But even where an employer does not learn of one's inability to work until after termination, an

12

employer may use after-acquired evidence to refute the employee's claim of retaliatory termination. *Wesselman v. Belger Cartage Service, Inc.*, No. Civ. A. 99-2173-KHV, 2000 WL 575018, at *5 (D. Kan. 2000) (unpublished opinion). In *Wesselman*, the defendant fired the plaintiff less than a month after his injury and then argued that the plaintiff was "barred from recovery based on his deposition testimony—nearly three years after he was fired—that he was and is unable to perform the duties of his former position." 2000 WL 575018, at *4. The court found that "under Kansas worker's compensation law, an employer has no duty to hire or retain an employee who cannot perform his former job. See *Rowland*, 13 Kan. App. 2d at 154, 766 P.2d at 822. . . . Because plaintiff has conceded that he was not and is not capable of performing his former job . . . he has failed to set forth a viable claim for retaliatory discharge." 2000 WL 575018, at *4-5. Applying Kansas caselaw, the United States District Court for the District of Kansas found that the plaintiff's deposition could be used as evidence that the plaintiff could not return to work and thus foreclosed his ability to recovery for retaliatory discharge. 2000 WL 575018, at *5. Similarly, Shoemaker's deposition serves as sworn evidence that she was unable to return to work, foreclosing a viable claim for retaliatory discharge.

   *Kansas Workers Compensation Act imposes no duty to accommodate.*

   Shoemaker argues that PPT had a duty to accommodate her in some manner so she could return to work, suggesting that PPT's failure to accommodate her shows its retaliatory motive. But Kansas law squarely refutes that assertion.

   In *Griffin,* as here, the plaintiff filed a retaliatory termination claim against his former employer arguing he was fired because he filed a workers compensation claim. We rejected the assertion that the Workers Compensation Act imposes a duty on the employer to make accommodations:

13

"[T]he fact that the Workers Compensation Act *encourages* employers to rehabilitate and accommodate injured employees does not alone impose a legal duty on the employer to make such an accommodation or be subjected to a tort action for wrongful discharge. Had the legislature intended to *mandate* that employers accommodate injured employees, it could easily have included language similar to that now contained in the KAAD and the ADA into the Workers Compensation Act.

. . . .

"[T]he public policy creating the tort of retaliatory discharge does not *require* employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position. While the Workers Compensation Act is designed to encourage employers to make such accommodations, an employer cannot be sued for retaliatory discharge simply because it failed to consider another position or to modify a job to accommodate an injured employee." 23 Kan. App. 2d at 148-49.

Shoemaker brought no claim under the Americans with Disabilities Act or the Kansas Act Against Discrimination. We reject Shoemaker's attempt to impose in the Kansas Workers Compensation Act or in our retaliatory termination law an employer's duty to make reasonable accommodations, such as may exist in the Kansas Act Against Discrimination and the Americans with Disabilities Act for persons with disabilities. Neither the KWCA nor Kansas retaliatory discharge law imposes a duty to modify a job to accommodate an injured employee or to consider that employee for another position. See *Griffin*, 23 Kan. App. 2d at 148-49 (stating "the public policy creating the tort of retaliatory discharge does not *require* employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position"). So PPT had no duty to make accommodations for her.

Shoemaker failed to meet her burden of demonstrating a genuine issue of material fact as to pretext. Because reasonable minds could not differ as to the conclusions drawn from the evidence, the district court properly granted summary judgment in favor of PPT.

14

We find it unnecessary to address the district court's alternative ruling that the 2015 settlement agreement also bars Shoemaker's retaliatory termination claim. We note, however, that the settlement was made in the context of a workers compensation hearing, and that its effect would be determined under the principles of release and settlement rather than collateral estoppel.

Affirmed.