No. 60,593

KELLY McKEE, A MINOR BY AND THROUGH HIS FATHER AND NEXT FRIEND, JERRY McKEE, *Appellant*, v. CITY OF PLEASANTON, KANSAS; ADOLPH REISS and CHARLES GOODNESS, d/b/a REISS & GOODNESS ENGINEERING; REISS & GOODNESS ENGINEERING, INC.; JACK N. DAVIS, d/b/a SPARTAN OF WICHITA; MARVIN G. ALLEN BUILDERS, INC.; and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellees*.

(750 P.2d 1007)

Opinion filed February 19, 1988.

*Dan L. Smith*, of Bronston & Smith, of Overland Park, argued the cause, and *Lloyd Burke Bronston*, of the same firm, was with him on the brief for appellant.

*Dennis L. Gillen*, of Depew, Gillen & Rathbun, of Wichita, argued the cause, and *James T. McIntyre*, of the same firm, was with him on the brief for appellees Adolph Reiss, Charles Goodness, and Reiss & Goodness Engineering, Inc.

*Mark Beam-Ward*, of Couch & Pierce, Chartered, of Overland Park, argued the cause, and *Keith K. Couch*, of the same firm, was with him on the brief for appellee Marvin Allen Builders, Inc.

*Robert A. Babcock*, of Margolin and Kirwan, of Kansas City, Missouri, argued the cause, and *George A. Lowe*, of Lowe, Farmer, Bacon and Roe, of Olathe, was with him on the brief for appellee United States Fidelity and Guaranty Company.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiff, Kelly McKee, is a minor, suing by and through his father and next friend, Jerry McKee. The plaintiff alleges that the defendant Reiss & Goodness Engineering, Inc., was negligent in not properly inspecting the construction of the Pleasanton, Kansas, swimming pool, and that the remaining defendants were negligent for failing to properly construct the swimming pool. The petition alleges that, as a result of the negligent actions of the defendants, Kelly McKee received serious injuries in an accident at the swimming pool.

The construction of the swimming pool was authorized by the City of Pleasanton, Kansas, which owned and operated the pool after its construction. Adolph Reiss and Charles Goodness, d/b/a Reiss & Goodness Engineering, Inc., prepared the plans and specifications for the swimming pool. On March 7, 1974, the City of Pleasanton contracted with Jack N. Davis, d/b/a Spartan of Wichita, and Marvin G. Allen Builders, Inc., for the construction of the swimming pool. The construction of the swimming pool was undertaken primarily by Davis until September 16, 1974, when Davis' company, Spartan of Wichita, forfeited its corporate charter for failure to file its annual report and to pay franchise taxes; the City of Pleasanton declared Davis in default. The pool was completed by Marvin G. Allen Builders, Inc., and Davis' bonding company, United States Fidelity and Guaranty Company (USF&G). The swimming pool was completed and turned over to the City of Pleasanton on June 2, 1976.

The plaintiff's petition alleges that, on June 13, 1980, Kelly McKee received serious injuries after slipping on the coping tile used around the edge of the swimming pool. On December 31, 1986, the Linn County District Court granted summary judgment against the plaintiff on behalf of defendants Reiss & Goodness, Marvin G. Allen Builders, Inc., and USF&G. On January 29, 1987, the district court also granted summary judgment in favor of defendant Davis, d/b/a Spartan of Wichita. Additional facts

will be stated as necessary for determination of the issues raised by the plaintiff on appeal.

Summary judgment is appropriate if the facts are not in dispute and the only question is one of law. In *Hunt v. Dresie*, 241 Kan. 647, 740 P.2d 1046 (1987), the rules applicable to summary judgment were summarized as follows:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial will not justify refusing that party his day in court. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." 241 Kan. at 652-53.

The plaintiff on appeal contends that, as to the defendant Reiss & Goodness Engineering, his claim is not based upon design negligence but, rather, negligent inspection. The plaintiff's statement of the issues and argument are somewhat misleading. He fails to specify what material facts are at issue. He instead contends that summary judgment is not proper because the trial court failed to consider the evidence in a light most favorable to the plaintiff. He further contends that there exists a genuine issue of material fact because the defendants were negligent in not constructing the pool in compliance with the plans and specifications and in not properly inspecting the construction of the pool. Plaintiff is confusing the issues of fact with the issues of law. It is not the facts that are in dispute but, rather, the trial court's interpretation and application of the law to the facts. Reiss & Goodness Engineering, on the other hand, argue that the plaintiff failed to present expert testimony that it had violated the architectural community standards and, therefore, failed to establish that Reiss & Goodness Engineering had committed professional negligence.

Although the district court's ruling touched briefly upon other matters, the essence of the court's decision was that the plaintiff had failed to present any expert evidence indicating that the defendants had negligently designed and constructed the swimming pool. During the course of the construction of the swim-

ming pool, red quarry tile was substituted for the concrete coping originally called for by the plans and specifications for the pool. The main issue in the present case is whether the trial court properly found that the plaintiff had failed to provide satisfactory expert evidence that the use of quarry tile was a deviation from the defendants' obligation to use reasonable care in the design, inspection, and construction of the swimming pool.

As the trial court's memorandum decision notes, the plaintiff retained two expert witnesses to testify regarding the use of the quarry tile coping. The first expert retained by the plaintiff was George W. Forman, a professor of mechanical engineering at the University of Kansas. Forman's testimony was limited to a comparison of the relative slipperiness of a piece of quarry tile to a piece of concrete coping. Mr. Forman conducted no quantitative measurements and did not attempt to estimate the coefficient of friction, but testified that the tile was not as slip resistant as the concrete coping. Forman expressly refused to testify as an architect or expert on the design and construction of swimming pools.

"Q. . . . I understand you are not testifying as a man who can construct pools, are you?

"A. Correct, I am not.

"Q. And you are not testifying that you are as a professional engineer for the construction of pools?

"A. Right.

"Q. And you are not testifying as a person or professional, or professional engineer who goes out and selects coping tile, or anything of that nature?

"A. Correct.

"Q. So, we're testifying today, and what you would feel comfortable in testifying today or in the future would be the relative slickness between these two pieces of tile?

"A. Yes.

"Q. And that's the only things that you would feel comfortable in testifying about?

"A. That's correct."

Forman explained the procedure he used to determine the relative slickness of the quarry tile and the concrete tile:

"A. Well, I visually observed the pieces of tile, I wet the surfaces and felt the surface characteristics of them with my bare hand, and in addition to this I applied some small drops of liquid soap, Ivory, specifically, to the tile to see what the influence of soap type material would have on frictional characteristics, and I

observed that the red tile essentially lost its adhesive characteristics to my skin, whereas, the porous concrete tile continued to grab to a relatively large extent.

"I have not made an attempt to quantify this through measurements, coefficient of friction, or the like. My observation was qualitative, not quantitative."

Forman did not attempt to determine the coefficient of friction for the two pieces of tile. He testified that he did not feel it was necessary.

The second person retained as an expert witness by the plaintiff was Dr. Alan R. Caskey. The trial court found that, although he "has experience and educational background in the area of the administration of municipal parks and recreation," Caskey "is not experienced or trained in [swimming pool] design and construction."

Caskey holds a Ph.D. in parks and recreation administration. The only formal education Caskey has received in the area of swimming pool construction was an undergraduate class which had "elements" of pool construction in it, in addition to aquatic skills, programming, and safety. Caskey is neither an architect nor an engineer.

During his deposition, Caskey explained the extent of his involvement with swimming pool construction.

"Q. What do you mean when you say you designed and developed swimming pool facilities?

"A. Basically, I operated under ARC Associates. I incorporated in the State of Illinois in the year of 1972. But we would take a contract with a municipality to design and oversee the construction of a swimming facility. ARC Associates would have the contract with the municipality and I would hire the appropriate individuals that I needed to put together the proper package from an electrical engineer to a mechanical engineer to an architect, whichever I needed as far as the licenses were concerned. I would—my role, basically, would be to describe the function, what I wanted and what I needed and they would provide the proper size pump, or the right electrical connection, or the proper color brick, or whatever it was."

Caskey testified that the National Swimming Pool Institute and the American Association of Public Health had established standards requiring coping surfaces on municipal swimming pools to be "slip resistant." Caskey defined "slip resistant" as material having a "wet coefficient of friction in excess of [0.5]." When asked how he arrived at this definition, Dr. Caskey referred to the reference book, Swimming Pools, A Guide to Their

Planning, Design and Operation, p. 211 (3d ed. 1975). This publication identifies ceramic or quarry tile as material which may be used as swimming pool coping. Caskey did not perform any quantitative examination to determine the coefficient of friction of the tile coping in the present case. He testified he was not an engineer and preferred that it be done by an engineer.

The only person to perform an examination to determine the wet coefficient of friction of the quarry tile used in the Pleasanton swimming pool was Robert Weiner, an engineer retained by one of the defendants. Weiner's tests indicated that the quarry tile used as coping on the swimming pool possesses a wet coefficient of friction of 0.60.

In *Seaman U.S.D. No. 345 v. Casson Constr. Co.*, 3 Kan. App. 2d 289, 594 P.2d 241 (1979), the Kansas Court of Appeals stated:

"One purpose of the community medical standard and its requirement of expert testimony is to educate the fact finder as to otherwise alien terminology and technology and thus preclude his rendering judgment on something he knows nothing about. We have no qualms in applying a similar standard to the architectural profession. We agree that architectural procedures are sufficiently technical and outside the realm of ordinary knowledge to warrant application of an 'architectural community standard' in most instances." 3 Kan. App. 2d at 293.

In the present case, the plaintiff has failed to meet the obligation of providing expert evidence indicating that the quarry tile used in the Pleasanton swimming pool deviated from the reasonable standards used within the appropriate architectural community. As the trial court noted, the plaintiff's first witness, George Forman, expressly refused to testify as an expert relating to the acceptability and safety of the quarry tile. The district court noted that the plaintiff's second witness, Dr. Alan Caskey, was neither an architect nor an engineer and had never personally designed and constructed a swimming pool. Moreover, in defining "slip resistant" coping as material possessing a wet coefficient of friction in excess of 0.50, Caskey expressly relied upon a reference book on swimming pool construction which expressly recognizes the use of quarry tile as coping material for swimming pools. Finally, the only quantitative examinations performed upon the quarry tile in the present case were those conducted by Robert Weiner. Weiner concluded, on the basis of his tests, that the quarry tile possessed a wet coefficient of

friction of 0.60 and, thus, possessed a markedly better degree of slip resistance than that which Caskey indicated was the standard for swimming pool coping material. Thus, the trial court correctly concluded that the expert evidence in the present case indicated that the quarry tile used in the Pleasanton swimming pool exceeded the safety standards accepted by the local architectural community.

The plaintiff, however, argues the *Seaman* case was a design negligence case and, therefore, not applicable to the present case. The plaintiff essentially argues that he has satisfied any obligation placed upon him by proving that the quarry tile used in the present case deviated from the coping material called for in the original plans and specifications. He contends that the defendants had a duty to construct the pool in accordance with the plans and specifications and they were negligent in failing to do so and in their failure to inspect the pool to insure it was constructed in compliance with the plans and specifications. The plaintiff relies upon *Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P.2d 425 (1967), in support of his argument. The plaintiff's reliance is misplaced.

In *Talley*, we observed that, as a general rule, a contractor is not liable for injuries to a party not privy to the contract when the injury occurs after the work was completed and accepted by the owner, even though the injury resulted from a breach of contract by the contractor. However, as to a contractor's liability for negligence, we proceeded to adopt the modern rule by holding:

"A building or construction contractor is liable for an injury to a third party resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, where such work is reasonably certain to endanger third persons if negligently done." Syl. ¶ 2.

"A general contractor has a duty to exercise reasonable care in superintending and inspecting the work called for in his contract, including work performed by his subcontractor, and when in turning work over to the owner he knew or by exercising reasonable care should have known of dangerous defects or conditions therein, he is liable for injuries occasioned thereby to persons coming in contact therewith." Syl. ¶ 4.

As to the issue before the court in *Talley*, we stated:

"Measured by the modern rule of liability, . . . we have no difficulty in concluding that the evidence was amply sufficient both to submit the question of Avalon's liability to a jury and to support the jury's verdict against Avalon. While

Mr. Sebring, president of Avalon, testified his company had hung three other heaters in the same manner that Skelly's was hung, he further said [the installation] always spanned three ceiling joists (while the instant heater spanned but two). In addition, there was ample competent evidence tending to show the heater was installed in such a defective manner as to create a risk. The suspicion might also occur, even to a layman possessing the sketchiest acquaintance with the law of gravity, that to suspend a 265 pound heater to a couple of ceiling joists with nails alone might well entail some hazard." 199 Kan. at 779.

In *Talley*, the negligent performance of the contract created a dangerously defective condition which ultimately caused injury to a third party. In the present case, there is no showing that the work was done in a negligent manner or that it created a dangerous defect or condition that should have been discovered by a proper inspection.

Although, in the present case, the material used as coping may have deviated from the type of material called for in the original plans and specifications for the swimming pool, this fact alone does not create liability on the part of the defendants as to third parties. The plaintiff must still demonstrate that the coping material actually used in the swimming pool was an unreasonable violation of the relevant architectural and engineering community standards. 65 C.J.S., Negligence § 4(6), p. 496, provides:

"The violation of a contract will not, as such, furnish a basis for liability in tort, but the act which violates the contract may be a negligent one which creates such liability, and in such a case it is the negligent act rather than the violation of contract which furnishes the basis for liability."

In the present case, all of the expert witnesses testifying as qualified architects or engineers stated that the quarry tile used was an acceptable material for swimming pool coping. The only quantitative examinations performed upon the quarry tile indicate that it exceeds the coefficient of friction standard required for swimming pool coping material. The trial court, thus, did not err in concluding that the plaintiff had failed to present expert evidence to support the allegation that the coping material used in the Pleasanton swimming pool violated relevant architectural and engineering community standards.

The plaintiff cites no authority which either directly or indirectly supports the proposition that a deviation from the plans and specifications in a construction project automatically renders

the contractor liable for negligence. While a violation of the plans and specifications may create contractual liability on the part of the contractor to persons in privity with him, something more must be shown before the contractor may be held liable for negligence.

In the present case, the use of quarry tile as a coping material in the Pleasanton swimming pool deviated from the original plans and specifications for the swimming pool. However, to recover, the plaintiff must demonstrate that the use of quarry tile constituted an unreasonable deviation from relevant architectural and engineering professional standards, or constituted a dangerous defect or condition that was known to the defendants or, by proper inspection of the pool, should have been known. In the present case, the plaintiff has clearly failed to make such a showing. All the expert testimony in the present case indicates that the use of quarry tile, while not called for in the original plans and specifications, was not a violation of the defendants' obligation to use reasonable care in the design, inspection, and construction of the swimming pool.

There are no unresolved issues of material fact and the trial court was correct in granting summary judgment in favor of the defendants. In view of the decision reached by this court, it is not necessary to address the other issues raised on appeal.

The judgment of the trial court is affirmed.