(202 P.3d 81)
No. 99,990

GABRIEL GAUMER, *Appellant*, v. ROSSVILLE TRUCK AND TRACTOR
COMPANY, INC., A KANSAS CORPORATION; INTERNATIONAL
TRUCK AND ENGINE CORPORATION, A DELAWARE CORP-
ORATION; and CNH AMERICA, LLC, A LIMITED LIABILITY
COMPANY, *Appellees*.

Opinion

filed March 6, 2009.

*Robert V. Eye* and *Elizabeth R. Herbert*, of Irigonegaray & Associates, of Topeka, for appellant.

*Dustin L. DeVaughn* and *Richard W. James*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee Rossville Truck and Tractor Company, Inc.

Before RULON, C.J., GREENE and HILL, JJ.

GREENE, J.: Gabriel Gaumer appeals the district court's summary judgment in favor of Rossville Truck and Tractor Company, Inc. (RT&T), terminating his product liability suit alleging negligence and strict liability and seeking damages for the amputation of part of his arm after it was injured in a farm baler purchased from RT&T. He argues on appeal: (1) The district court erred in entering the summary judgment on his negligence claim despite his lack of an expert on the standard of care; and (2) the court erred in entering summary judgment on his strict liability claim based on the product being used. We affirm the summary judgment against Gaumer on his negligence claim, but we reverse and remand for further proceedings on his strict liability claim.

## *Factual and Procedural Background*

Gaumer's father purchased the used Case IH Big Round Hay Baler from RT&T in June 2003 for $1,700. Notably, the baler was sold with a safety shield having been removed, but the bill of sale indicated the sale was "as is." One week later, Gaumer was operating the baler when it malfunctioned, causing Gaumer to dismount the tractor and squat near the baler to observe its operation in an attempt to understand the malfunction. When he attempted to stand from his squatting position, he slipped and his left arm inadvertently entered an unprotected opening in the side of the baler, exposing the arm to the mechanism of the baler at a location previously covered by a safety shield. His injuries led to the amputation of his left arm just below the elbow.

Gaumer originally brought suit against both the manufacturers and RT&T, but after settlement with the manufacturers, the suit

proceeded only against RT&T. After expert designations and discovery, RT&T sought summary judgment against Gaumer, arguing his negligence claim could not be established without an expert on the standard of care for sellers, and his strict liability claim based on the sale of a used product was not supported by Kansas law. The district court agreed with RT&T and entered summary judgment against Gaumer on both claims. Gaumer appeals.

## Standard of Review

The parties agree on appeal that there are no factual disputes and that the only issues framed are legal questions. Where there is no factual dispute, appellate review of a summary judgment is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

## Did the District Court Err in Granting Summary Judgment Against Gaumer on His Negligence Claim?

Gaumer initially argues the district court erred in terminating his negligence claim. Specifically, Gaumer alleged that RT&T was negligent in failing to warn of a potentially dangerous condition of the baler at the time of the sale. Although Gaumer designated an expert who testified as to the dangerous condition of the baler, this expert did not present testimony on the standard of care applicable to a seller of such equipment. Gaumer argued below and on appeal that such an expert is unnecessary because the duty was within the common knowledge of jurors. In granting summary judgment against Gaumer, the district court rejected this argument, stating:

"The Court agrees with Defendant that the duty of a farm implement dealer in rural Shawnee County is beyond the capability of the lay person to decide.

"The Court agrees that the average juror in Shawnee County, though it is in an agrarian state such as Kansas, is not going to have sufficient knowledge of the used farm implement industry to make the necessary determination for this case and as such the 'common knowledge exception' is not suitable in this instance. [Citation omitted.] The Supreme Court of Kansas acknowledged in a round hay baler case that 'laymen serving on Kansas juries seldom have any special knowledge about the mechanical operation of hay balers. The whole subject is rather technical.' *Siruta v. Hesston Co.*, 232 Kan. 654, 665, 659 P.2d 779 (1983). . . .

". . . How can a lay juror be expected to have common knowledge of the operation of an implement dealer, its duty to warn or its duty to inspect? The Court feels that expert testimony is required to explain the duty and standard of

care for a used farm implement dealer. In this case Plaintiff has provided no such expert, and the date for introducing such an expert has passed."

Gaumer argues on appeal that the district court erred in failing to recognize that the standard of care of a used implement dealer is within the common knowledge of jurors, who are well acquainted with sales transactions. Gaumer suggests that these facts are not dissimilar to those in cases where our appellate courts have found that no expert testimony was needed, such as *Juhnke v. Evangelical Lutheran Good Samaritan Society*, 6 Kan. App. 2d 744, 634 P.2d 1132 (1981). We disagree.

Whether expert testimony is necessary to prove negligence is dependent on whether, under the facts of a particular case, the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation from the standard. See *Juhnke*, 6 Kan. App. 2d at 748.

Despite the ordinary experience of jurors in sales transactions, the facts here involve the standard of care of the seller of used farm equipment that our Supreme Court has found to be extraordinarily complex. We agree with the defendant's suggestion and the district court's finding that most jurors in Shawnee County are not likely to have experience in the purchase or sale of such complex farm equipment—whether new or used—and whatever experience they may have in the sale or purchase of other consumer products is not necessarily applicable. This is not a case like *Juhnke*, where no expert was needed to establish the standard of care applicable to a nursing home to protect other patients from a known violent patient with a history of injuring his copatients.

Here, the standard of care of the seller of a used hay baler is outside the ordinary experience and common knowledge of the jury and beyond the capability of a lay person to decide. See *Williamson v. Amrani*, 283 Kan. 227, 245, 152 P.3d 60 (2007). The district court did not err in granting summary judgment to RT&T given Gaumer's failure to designate an expert who could enlighten the jury on the applicable standard of care.

We note that Gaumer also argues on appeal that no expert should be required to establish his claim of negligent failure to

inspect the subject equipment prior to sale. These arguments are precluded by the district court's conclusion that an amendment to assert such claim was untimely and would not be allowed. Gaumer does not suggest on appeal that this order was an abuse of discretion, nor does he otherwise challenge the order. Accordingly, the district court's preclusion of a claim of negligent failure to inspect need not be considered.

### Did the District Court Err in Granting Summary Judgment Against Gaumer on his Strict Liability Claim?

Gaumer next argues the district court erred in granting summary judgment against him on his strict liability claim. Gaumer suggests that he established a prima facie case for strict liability and that the court erred in terminating his claim based on a principle of law that has no support in Kansas. In granting the summary judgment against Gaumer on this claim, the district court found that the lack of an expert addressing the "defectiveness of the product" was fatal, stating:

"Plaintiff would like the Court to simply piggyback the opinion of defectiveness from the manufacturers to the seller; however, it is inadequate in the eyes of the Court for Plaintiff's expert simply to address only the manufacturer and to remain silent on the seller's knowledge of the defective product or the responsibility of the seller for the manufacturer's defective design. Without any sort of mention by [plaintiff's expert] of Defendant [RT&T] in his report, the Court cannot see how strict liability can be imparted to Defendant in this case."

The court also based its decision on the principle that a strict liability cannot be asserted against the seller of a used product, stating:

"Even if the failure to provide an expert was not fatal the Court finds strict liability does not apply to a seller of used products. Neither party has provided a Kansas cite nor can the Court find a Kansas state case that stands for this proposition."

The court then cited two federal district court decisions and concluded:

"The purpose of discouraging the marketing of defective products would not be fulfilled by extending strict liability to sellers of used products that have not repaired or remanufactured the product. The used product dealer has a different

relationship with a manufacturer than that of a retailer of new products. Furthermore, the expectations of a buyer of a used product generally are not the same as those of a buyer of a new product."

We respectfully disagree with the district court on both of its bases for terminating Gaumer's strict liability claims.

First, we disagree that any further expert opinion beyond that offered by Gaumer was required for a prima facie case of strict liability. His expert opined in material part:

"1. The IHC Model 2400 Large Round Baler, Serial Number 4345, is defective in design and unreasonably dangerous from the standpoint of an ordinary consumer because it has associated with its foreseeable use and maintenance a recognized hazard with a foreseeable risk of serious injury or death. . . .

. . . .

"4. The defects in the IHC Model 2400 Large Round Baler were causative of the injuries received by Gabriel Gaumer."

To present a prima facie claim of strict liability in the manufacture or sale of a product, the plaintiff must produce proof of three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control. *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 630, 886 P.2d 869 (1994) *cert. denied* 516 U.S. 820 (1995); *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348 (1983). Moreover, the focus must be on the product itself, not the acts or omissions of the maker or seller. See *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 114, 795 P.2d 915 (1990) ("Under the strict liability theory, a plaintiff is not required to establish misconduct by the maker or seller but, instead, is required to impugn the product.").

RT&T conceded at oral argument that these elements were established, and we agree. The expert's opinion established both that the product's condition was unreasonably dangerous and that the injury resulted from that condition. The fact that the condition existed at the time it left RT&T's control, although not carefully and expressly stated by uncontroverted facts, seems to have been implied by the uncontroverted facts and has not been disputed by RT&T either below or on appeal. Thus, a prima facie case of strict liability appears to have been established by Gaumer.

The district court's concern about the lack of expert opinion as to "knowledge of the defective product" and "responsibility of the seller for the defective design" seems to have confused the seller's defense with the elements of plaintiff's prima facie case. The elements of the seller's knowledge of a defect and the seller's responsibility to discover the defect are within the statutory prerequisites for seller's immunity from product liability contained in K.S.A. 60-3306, which provides:

"A product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes that: (a) Such seller had no knowledge of the defect;

(b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

(c) the seller was not a manufacturer of the defective product or product component;

(d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

(e) any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied."

Although RT&T properly pled immunity under this statute, this defense was not framed by or any part of the summary judgment motion. Instead, the motion sought judgment on the basis Gaumer had failed to establish a prima facie case due to lack of required expert testimony. Accordingly, the district court's reference to aspects of the immunity defense was not relevant in deciding a summary judgment framing only the question whether a prima facie case had been established. Certainly, RT&T could have sought judgment based on uncontroverted facts establishing the elements of an immunity defense, but it did not choose to seek such a judgment and the immunity defense was simply not before the district court.

Regarding the district court's second basis for its decision, we disagree that Kansas law supports the principle that there be no product liability for the sale of used products. As conceded by the court and confirmed by the parties, there is no reported appellate decision in support of this principle. Although two federal district

court cases in Kansas have addressed similar fact situations, those cases are distinguishable and without controlling effect on us. See *Stillie v. AM International, Inc.*, 850 F. Supp. 960 (D. Kan. 1994); *Sell v. Bertsch and Co., Inc.*, 577 F. Supp. 1393 (D. Kan. 1984). In both of these cases the federal district court addressed the implications of remanufacturing or repairing products after release into the stream of commerce. Although one of the cases suggests that our Supreme Court might find immune a seller of a used product who has not repaired or remanufactured the product, this court does not have the liberty of carving exceptions to established law when our Supreme Court has not led the way.

Indeed, established principles of products liability in Kansas do not recognize any exception for sellers of used products. Our Supreme Court long ago adopted the Restatement (Second) of Torts §402A (1964), imposing liability on a "seller" of a "product" that is defective and dangerous to a user even though the seller has exercised "all possible care in the preparation and sale of his product." See *Brookes v. Dietz*, 218 Kan. 698, 70-02, 545 P.2d 1104 (1976). No exception for sellers of *used* products has ever been recognized by our Supreme Court, and consistent with the general rule, PIK Civ. 4th 128.17 recognizes product liability of sellers without regard to new or used products.

"A (manufacturer) (seller) who sells a product in a defective condition which is unreasonably dangerous to the (user) (consumer) is subject to liability for physical harm (or property damage) thereby caused to the ultimate (user) (consumer), if:

"(1) The (manufacturer) (seller) is in the business of (making) (selling) such a product; and

"(2) It is expected that the product will reach and does reach the (user) (consumer) without substantial change in the condition in which it is sold."

Moreover, we note that in promulgating K.S.A. 60-3306, our legislature certainly had the opportunity to more broadly extend immunity to sellers of used products but chose instead to generally provide for seller immunity upon a showing of specified criteria, none of which seem to be expressly sensitive to any distinction for new or used products. Our Supreme Court or our legislature may decide to create such an exception, but until either or both have occurred, we must apply the general principles reflected in the

Restatement, the reported cases from our appellate courts, and our current PIK instruction.

For these reasons, we conclude the district court erred in terminating Gaumer's claims based upon elements of a defense that was not before the court on summary judgment and based upon an unrecognized exception to product liability for sellers of used products. We reverse the district court's grant of summary judgment on Gaumer's strict liability claim and remand for further proceedings on that claim.

Affirmed in part, reversed in part, and remanded with directions.