NOT DESIGNATED FOR PUBLICATION

No. 112,872

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HERALD FARLEY,
*Appellant*,

v.

BNSF RAILWAY COMPANY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed March 25, 2016. Affirmed.

*Andrew H. McCue*, of Accurso Law Firm, of Kansas City, Missouri, and *Drew C. Baebler*, of Bauer & Baebler, PC, of Saint Louis, Missouri, for appellant.

*Craig M. Leff*, and *Spencer L. Throssell*, of Overland Park, for appellee.

Before PIERRON, P.J., BRUNS, and GARDNER, JJ.

*Per Curiam*:  Herald Farley filed his action for damages against BNSF Railway Company under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 (2012) *et seq.* After deposing Farley's expert witnesses, BNSF filed several motions, including a motion to strike or limit the testimony of the liability expert, a motion for partial summary judgment alleging Farley's claims regarding injuries to his neck, upper back, lower back, shoulders, and feet were time barred, and a motion for summary judgment. The district court first granted the motion to strike the testimony of the liability expert, then granted the motion for summary judgment, finding Farley did not have a prima facie

1

case for negligence. The district court next granted the partial summary judgment motion because Farley had failed to timely respond to that motion and had failed to show excusable neglect. The district court further found that had it reached the merits of that motion, it would have found Farley's claim time barred. Farley timely appeals. We find that the district court properly struck Farley's expert witness on liability and that summary judgment was warranted on that basis.

*Procedural background*

Farley began working for BNSF in the Topeka service and maintenance terminal (Topeka SMT) in 1993. In 2010 he filed this case under FELA alleging he suffered cumulative trauma injuries to his "arms, hands, knee, bilateral feet, neck, lower back and all parts thereof." Farley alleged these injuries were the result of his job-related duties as a sheet metal worker and pipefitter in the Topeka SMT. Those duties included working in confined spaces, walking on uneven surfaces, working in awkward positions, lifting and carrying heavy objects, and engaging in repetitive motion and overuse. Farley claimed that during the course of his employment, "[he] was constantly and continuously required by [BNSF] to engage in excessive, dangerous, constant and repetitive manual labor . . . without being afforded reasonably safe conditions and methods of work."

During discovery, Farley informed BNSF of the experts he intended to call at trial. His sole liability expert was Dr. Tyler Kress, an expert experienced in ergonomics. Dr. Kress planned to testify BNSF had failed to provide a reasonably safe place to work and was negligent by failing to have adequate ergonomic tools and work practices to prevent injuries like those Farley sustained. Farley also disclosed several treating physicians who planned to testify Farley's work caused or contributed to his injuries.

After BNSF deposed Farley, Dr. Kress, and the treating physicians, BNSF filed a motion to strike Dr. Kress' testimony and to bar the causation opinions of Farley's treating

2

physicians. BNSF also filed a motion for partial summary judgment, arguing claims regarding his neck, upper back, lower back, shoulders, and feet were time barred because they were not brought within 3 years as required under FELA. Finally, BNSF also filed a motion for summary judgment claiming Farley could not produce any evidence of BNSF's negligence, nor could he produce any evidence establishing a causal link between the alleged negligence and his injuries.

After reviewing the depositions and hearing arguments on the motions, the district court granted BNSF's motion to strike Dr. Kress' expert opinions, finding:

- Dr. Kress had no evidence of the amount of repetition in Farley's job;
- Dr. Kress did not know the weight of the tools Farley used;
- Dr. Kress did not quantitatively measure Farley's exposure to the relevant risk factors in performing his job; and
- Dr. Kress did not apply the facts in Farley's case to existing studies about his type of work.

The district court concluded that discussion by finding:

> "Kress's opinions in this case are based on the same *post hoc ergo propter hoc* logic that our Supreme Court found to be deficient in *Kuxhausen* [*v*]. *Tillman Partners*, 291 Kan. 314, 241 P.3d 75 (2010)], and . . . Kress fails to show a methodology for his opinions that would allow this court to find that he should be able to testify as an expert using the *Daubert* [v. *Merrell Dow Pharmaceuticals*, *Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993),] standard . . . ."

Next, the district court addressed BNSF's motion to exclude causation opinions. The district court granted the motion as to two treating physicians; but it denied the

3

motion as to three treating physicians, finding those three could offer opinions that Farley's job duties caused his injuries. Farley does not challenge those rulings on appeal.

The district court then turned to the remaining motions. First, the district court held that without the testimony of Dr. Kress, Farley could not establish the essential elements of negligence under FELA. Second, the district court granted the partial summary judgment motion because Farley had filed his response to the motion out of time and did not show excusable neglect. Further, the district court held that even if it had found excusable neglect, the statute of limitations had run on the aforementioned injuries, thus the motion for partial summary judgment would be granted on its merits as well.

Farley timely appeals.

*Did the district court err by striking Dr. Kress' expert testimony?*

We first address whether the district court erred by striking the testimony of Dr. Kress, Farley's expert on liability. The district court used the *Daubert* standard to make its ruling regarding this testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). As this court is aware, the 2014 Kansas Legislature amended K.S.A. 60-456 through K.S.A. 60-458, effectively abrogating the Kansas courts' long-held reliance on the *Frye* test for scientific evidence. See *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). These amendments were effective July 1, 2014, and the hearing regarding Dr. Kress' testimony was July 21, 2014. Therefore, the district court correctly applied *Daubert* standards in lieu of *Frye* standards when determining the admissibility of Dr. Kress' testimony.

4

*Daubert requirements*

At the time the district court granted BNSF's motion to strike Dr. Kress' testimony and its motion for summary judgment, the admission of expert witness testimony was controlled by K.S.A. 2014 Supp. 60-456(b), which provides:

> "If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

We review de novo whether the district court actually performed its gatekeeper role in the first instance and whether it applied the proper standard in admitting expert testimony. See *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009) (applying Fed. R. Evid. 702). Where, as here, the district court performed its gatekeeper role and applied the proper legal standard, we review for abuse of discretion the district court's decision to admit or exclude the testimony. See *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 70, 274 P.3d 609 (2012). Judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Under K.S.A. 2014 Supp. 60-456(b), we must decide first whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. The parties in this case do not dispute Dr. Kress' qualifications as an expert. The district court did not find him to be unqualified, and our review of the record confirms that he is qualified as an expert under this rule.

5

Second, this court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Nacchio*, 555 F.3d at 1241 (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Specifically, this court must determine whether the testimony "is based on sufficient facts or data," wheather is "the product of reliable principles and methods," and whether "the witness has reliably applied the principles and methods to the facts of the case." K.S.A. 2014 Supp. 60-456(b). The district court expressly performed this gatekeeping function in Farley's case, finding Dr. Kress' testimony failed to meet these requirements.

Reliability of an expert's testimony may be demonstrated in various ways. The law "grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire v. Carmichael*, 526 U.S. 137, 142, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Our review of a district court's reliability determination begins with understanding whether an expert is basing his or her testimony on scientific theory or, rather, on experience.

> "Under *Daubert*, the court determines the reliability of proposed testimony by looking to factors such as (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. 509 U.S. at 592-94.

> "On the other hand, an expert may be qualified to render opinions based on experience alone. [Citations omitted.] To the extent a witness is relying primarily on experience, he or she 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' [Citation omitted.] The court has 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' [Citation omitted.]" *Seifert vs. Unified Government of Wyandotte County*, No. 11-2327-JTM, 2016 WL 107932, at *2 (D. Kan. 2016).

6

Dr. Kress' opinions were not purportedly based on a particular scientific theory, but on his experience.

> "*Kumho Tire* expanded the *Daubert* inquiry to cover expert testimony that is not purely scientific . . . .  It nonetheless emphasized 'the importance of *Daubert*'s gatekeeping requirement.' [Citation omitted.] 'The objective of that requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' [Citation omitted.] Affirming the district court's refusal to allow an expert witness to testify, the Supreme Court 'found no indication in the record that other experts in the industry use [the expert's] two-factor test,' and noted that the parties did not 'refer to any articles or papers that validate [the expert's] approach.' [Citation omitted.] The Court reemphasized an earlier holding that 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse* [*dixit*] of the expert.' [Citations omitted.]" *United States v. Medina-Copete*, 757 F.3d 1092, 1101 (10th Cir. 2014) (finding the district court abused its discretion in admitting an expert witness to offer opinion testimony pursuant to Fed. R. Evid. 702 about the connection between so-called "narco saint" iconography and drug trafficking).

Thus, we review the record to determine whether Dr. Kress explained how his experience, including the professional studies on which he relied, lead to his conclusions, why his experience provided a sufficient basis for his opinions, and how his experience is reliably applied to the facts. See Fed. R. Evid. 702 Advisory Committee Note (2000 Amendment).

*Dr. Kress' Testimony*

Prior to his deposition, Dr. Kress supplied a report and supplemental report which provided his findings, his qualifications and experience, a list of material he relied upon, and a list of potentially relevant literature. During his deposition, Dr. Kress testified he

7

could not recall whether he had specifically observed a pipefitter performing work on a locomotive. He also testified he could not recall whether he had ever visited the Topeka SMT. Furthermore, when asked whether he had based his opinions in this case on a site visit, Dr. Kress replied:

"Only in the sense of the numerous site inspections I've done in the past and familiarity with railroad work and tools, and the environment of working on locomotives and shops. So, I've done a numerous amount of inspections at various shops across the county. So, in the sense of my background and understanding of this work environment, yes, but not a case specific inspection."

But Dr. Kress failed to recognize the undisputed fact that the Topeka SMT is a unique working environment in which ergonomic factors cannot accurately be compared to other locations. Because Dr. Kress had never visited the Topeka SMT, he could not refute the affidavit signed by Lawrence Fleischer, the Director of Ergonomics and Safety of BNSF, which states:

"I have observed locomotive repair shops on the BNSF system, and I worked at the Topeka SMT. The Topeka SMT is a distinct and unique working environment that cannot be accurately compared to other locations due to the unique job tasks, tools, machines, specialized ramps, cranes and shop layout that only exist in that location."

Dr. Kress did not meet Farley, but he had a phone conversation with him which lasted 45 minutes to 1 hour. Farley told Dr. Kress about the tools he worked with, the awkward positions he worked in, and the fact that he had to work on his knees. While Dr. Kress claimed the tools Farley used were not ergonomically designed, he could not identify the makes and models of those tools. He testified that his statement was based on his "recollection of Burlington Northern tools in depositions and inspections and reviews in the past." Additionally, Dr. Kress thought that Farley had told him that a 48-inch pipe wrench weighed approximately 75 pounds, but during his deposition Dr. Kress stated that

8

he did not believe that could be correct. Dr. Kress thought perhaps Farley meant 35 pounds, but he was unsure.

When asked to state three specific things BNSF should have done to prevent Farley's injuries, Dr. Kress could not do so. He replied:

> "Well, you're asking me to give you three specific things to prevent his injuries. And I think implicit in that question is that I have come to a conclusion that there are three specific things that caused his injuries and I have not done that. So, I cannot answer that question and give you three specific things that would prevent his injuries."

Dr. Kress thought BNSF should have a standardized ergonomics program and awareness training of what cumulative trauma disorders are:

> "Well, I think [BNSF] should have an ergonomics program similar to what's been put forth through guidelines that have been around for a long time. OSHA has put forth standards and guidelines in that regard. There's ergonomic program elements from documents from NIOSH and numerous other sources that involve awareness training of what cumulative trauma disorders are. What their risk factors are and what tasks and techniques and activities are associated with [them]. What the early warning signs are from a symptomatic, symptomatology standpoint. Having appropriate intervention strategies. So, I believe that good workplace design with respect to addressing these work practices, technique training specific to that, and awareness training and knowledge training to the workforce is important."

But when asked if he had any evidence other than his interview with Farley that BNSF had failed to comply with NIOSH guidelines, Dr. Kress replied, "Well, I've certainly worked on other cases and I recall many other workers and information indicating that tasks that are inconsistent with NIOSH lifting guidelines."

Throughout his deposition, Dr. Kress never provided specific examples of what BNSF did wrong or could have done better in Farley's case or in the case of a locomotive pipefitter at the Topeka SMT. Dr. Kress alluded to industry guidelines and ergonomic programs provided by OSHA, NIOSH, and "numerous other sources," which he stated BNSF should follow. Yet he admitted that he did not rely on literature that was case specific, he never visited the Topeka SMT, and he did not recall ever observing a pipefitter performing his job duties.

*Conclusion*

K.S.A. 2014 Supp. 60-456(b) requires that district courts ensure that proffered testimony be "'based on sufficient facts or data'" and "'the product of reliable principles and methods.'" See *Medina-Copete*, 757 F.3d at 1103 (so stating as to Fed. R. Evid. 702[b] and [c]). Neither of these criteria was met here. The record reflects a complete absence of data relative to the facts of this case supporting Dr. Kress' testimony, and no showing that he applied to those facts a reliable principle and method to reach his conclusions.

Because nothing in the record provides the necessary connection between Dr. Kress' experience and his conclusions, we find that Dr. Kress' "opinion evidence [was] connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157. After independently reviewing Dr. Kress' deposition, report, supplemental report, and other matters in the record, we find the district court did not abuse its discretion by granting BNSF's motion to strike Dr. Kress' expert testimony.

*Did the district court err by granting summary judgment in favor of BNSF?*

After granting BNSF's motion to strike the testimony of Dr. Kress, the district court held: "[T]he jury would absolutely have to have an expert in this case to find

negligence." The district court found that without the testimony of Dr. Kress, Farley could not establish the existence of essential elements in his case for negligence under FELA so it granted BNSF's motion for summary judgment. On appeal, Farley challenges that conclusion.

*Liberal construction of FELA*

Farley argues several reasons why the district court erred by granting summary judgment in favor of BNSF. First, "FELA is a broad remedial statute that must be construed liberally to effectuate its humanitarian purposes." Farley contends that under FELA, a plaintiff faces a "relaxed, almost negligible burden," thus he should have received the benefit of a jury trial.

Correspondingly, Farley argues a lower standard of causation is applicable to FELA claims. But the causation opinion of his treating physicians are not determinative in this case, as the district court held three of the five treating physicians could testify that Farley's work duties caused or contributed to his injuries. The district court did not preclude Farley from proving causation. The district court held that without the testimony of Dr. Kress, Farley could not establish BNSF breached its legal duty to Farley. We address Farley's arguments in light of that holding.

Congress enacted FELA in 1908 to provide a comprehensive scheme for railroad workplace injuries, preempting state law tort claims. *Norfolk Southern R. Co. v. Sorrell,* 549 U.S. 158, 165, 127 S. Ct. 799, 166 L. Ed. 2d 638 (2007). Under FELA:

> "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such

11

carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51 (2012).

We apply a lower standard of proof for causation in FELA actions. *Knowles v. Burlington Northern R.R. Co.*, 18 Kan. App. 2d 608, 613, 856 P.2d 1352, *rev. denied* 254 Kan. 1007 (1993); see also *CSX Transp., Inc. v. McBride*, 564 U.S. __, 131 S. Ct. 2630, 2638-43, 180 L. Ed. 2d 637 (2011) (rejecting traditional proximate cause standard in favor of more expansive causation standard; finding it sufficient that railroad's negligence played "any part" in producing the injury). "It is firmly established that questions of sufficiency of evidence for the jury in cases arising under FELA in state courts are determined by federal rules." *Norton v. Norfolk Southern Ry. Co.,* 350 S.C. 473, 476, 567 S.E.2d 851 (2002). The relaxed causation standard has prompted the Seventh Circuit Court of Appeals to note that "numerous FELA actions have been submitted to a jury based upon . . . evidence scarcely more substantial than pigeon bone broth." *Harbin v. Burlington Northern*, *R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990).

While it is true that under FELA the quantum of evidence sufficient to present a jury question of causation is less than it is in a common law tort action, "the relaxed causation standard under FELA does not affect [plaintiffs'] obligation to prove that [the employer] was in fact negligent." *Volner v. Union Pacific. R. Co.*, 509 F. Appx. 706, 708 (10th Cir. 2013) (unpublished opinion) (quoting *Van Gorder v. Grand Trunk W. R.R.,* 509 F.3d 265, 269 (6th Cir. 2007). We agree with the reasoning of those courts that have concluded that the relaxed causation standard under FELA and the standard for admission of expert testimony "are distinct issues" that "do not affect one another." *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994); see *Bowers v. Norfolk Southern Corp.,* 537 F. Supp. 2d 1343, 1352 (M.D. Ga. 2007). In other words, "the fact that FELA employs a relaxed standard of causation 'does [not] mean that in FELA cases courts must allow expert testimony that in other contexts would be inadmissible.'" 537 F.

12

Supp. 2d. at 1352. Rather, the admission of expert testimony is controlled—even in FELA cases—by the rules of evidence and *Daubert*. *Bowers*, 537 F. Supp. 2d at 1352. Accordingly, the Tenth Circuit Court of Appeals continues to apply the standard *Daubert* analysis to expert opinions offered in FELA claims. See, *e.g.*, *Summers v. Missouri Pacific R.R. System*, 132 F.3d 599, 603 (10th Cir. 1997).

Employer liability under FELA is based on the employer's negligence, not merely on the fact of the employee's injuries. *Ellis v. Union Pacific R. Co.,* 329 U.S. 649, 653, 67 S. Ct. 598, 91 L. Ed. 572 (1947). Accordingly, in order to recover under FELA, Farley had the burden to prove the traditional common-law negligence elements of duty, breach of a duty, foreseeability of injury, and causation with its attendant relaxed burden. *Volner*, 509 Fed. Appx. at 708; see *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998); *Wilson v. BNSF Railway. Co.*, No. 100,115, 2009 WL 2948656, at *5 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1105 (2010).

> '[T]he [FELA] plaintiff must prove that the railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. [Citations omitted.] The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances. [Citation omitted.]' *Davis v. Burlington Northern, Inc.,* 541 F.2d 182, 185, (8th Cir.) *cert. denied* 429 U.S. 1002 (1976).

"We point out that a railroad is not an insurer. '"If [the railroad] has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then [the railroad] is not required to do anything to correct [the] condition." [Citation omitted.]' *CSX Transp., Inc. v. McBride,* 564 U.S. __, 131 S. Ct. 2630, 2643, 180 L. Ed. 2d 637 (2011)." *Davila v. BNSF Railway. Co.*, No. 107,533, 2013 WL 1859208, at *3 (Kan. App. 2013) (unpublished opinion), *rev. denied* 298 Kan. 1201 (2013).

13

Farley thus had the burden under FELA to show a genuine dispute of material fact that BNSF breached its legal duty to Farley and that Farley's injuries had been caused by his work.

Farley attempted to meet this burden through Dr. Kress' expert testimony that BNSF had breached its legal duty to Farley. We agree that without Farley's testimony on liability, the testimony on causation was insufficient to present a submissible case of negligence under FELA to the jury.

*Necessity of expert testimony*

Farley contends this case does not require expert testimony because Farley provided "extensive testimony" that his job duties were unsafe. Farley claims that he would also testify that he has complained on numerous occasions about what he considered to be unsafe work conditions to his supervisors at the railroad, but they did nothing to improve the conditions and were unresponsive to his complaints.

We recognize that not every case requires expert testimony. But "[a]s a general rule, only where the subject matter is not complicated and it is elementary or of common knowledge are lay people serving as jurors allowed, without the need of an expert, to draw proper conclusions from given facts and circumstances." *Knowles*, 18 Kan. App. 2d at 611; see *Williamson v. Amrani,* 283 Kan. 227, 245, 152 P.3d 60 (2007).

"Whether expert testimony is necessary to prove negligence is dependent on whether, under the facts of a particular case, the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant, and the alleged deviation from the standard. See *Juhnke,* 6 Kan. App. 2d at 748, 634 P.2d 1132." *Gaumer v. Rossville Truck and Tractor Co.*, 41 Kan. App. 2d 405, 408, 202 P.3d 81

14

(2009) *aff'd* 292 Kan. 749, 257 P.3d 292 (2011) (finding the standard of care of the seller of a used hay baler is outside the ordinary experience and common knowledge of the jury and beyond the capability of a lay person to decide).

Farley's theory of liability is that his workplace involved unreasonable exposures to ergonomic risk factors, resulting in various cumulative degenerative conditions in his arms, hands, knee, feet, neck, and lower back**.** The conclusion of liability in this case is not one within the common knowledge of lay persons who do not know whether Farley, while working as railroad pipefitter in Topeka, was unreasonably exposed to risk factors known to the employer such as force, posture, repetition, and vibration. Nor would a jury know whether BNSF was or should have been aware of conditions creating a likelihood that Farley, in performing his job duties, would suffer cumulative trauma.

Farley's case is similar in this respect to FELA cases which have found that expert testimony is necessary to establish that a railroad has breached its duty to provide its workers with a reasonably safe workplace by exposing them to ergonomic risk factors. See, *e.g.*, *Doty v. Illinois Cent. R. Co*., 162 F.3d 460, 461-63 (7th Cir. 1998) (granting summary judgment where no expert would testify to railroad's liability in providing unsafe ergonomic conditions in the workplace); *Staisor v. National Railway Passenger Corp*., 19 F. Supp. 2d 835, 846-51 (N.D. Ill. 1998) (granting summary judgment where proposed expert testimony regarding occupational risk factors and working conditions was not reliable). We find that without the testimony of Dr. Kress, Farley is not able to show BNSF breached a legal duty owed to him, nor can he show his injuries were foreseeable. See *Volner* 509 Fed. App. at 708-09 (finding Volner failed to present evidence showing that the railroad breached a duty by failing to use ordinary care or failing to do what a reasonably prudent person would do to make the work environment safe).

Because Farley failed to present sufficient evidence to raise a genuine issue of material fact as to the negligence of BNSF, granting summary judgment to BNSF was proper. See generally *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

*Conclusion*

Because summary judgment was warranted, we do not need to consider the remaining issues raised on appeal. Regardless of which injuries Farley claims, he is unable to establish a genuine issue of material fact as to negligence under FELA.

Affirmed.