**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 19, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

THERESE CRUZ,

    Plaintiff - Appellant,

v.

THE AMERICAN NATIONAL RED
CROSS, d/b/a American Red Cross,

    Defendant - Appellee.

No. 21-3105
(D.C. No. 6:19-CV-01107-EFM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Therese Cruz asserted a negligence claim in Kansas state court against The

American National Red Cross alleging that she was injured during a blood donation.

Following removal of the case to the United States District Court for the District of

Kansas pursuant to 28 U.S.C. § 1332 on diversity of citizenship, the district court

granted summary judgment for the Red Cross because Ms. Cruz failed to establish a

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

triable question as to whether the Red Cross violated the applicable standard of care.

She now appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Ms. Cruz donated blood at a Red Cross blood drive.  She alleged that when the

phlebotomist inserted the needle in her arm she felt a sharp pain.  During the blood

donation procedure, she also experienced dizziness, nausea, and swelling, tingling,

and numbness in her arm.  Based on these reactions, the phlebotomist terminated the

blood draw early.  She bandaged Ms. Cruz's arm and told her to lie down.

Ms. Cruz's side effects continued, so she was transported to a hospital.

About a year later, Ms. Cruz went to a hospital complaining of right arm pain.

After another hospital visit and a nerve conduction study that "show[ed] the presence

of an entrapment of the median nerve at wrist level," she was diagnosed with carpal

tunnel syndrome.  Suppl. App., vol. I, at 31.

In her complaint, Ms. Cruz alleged that the Red Cross phlebotomist was

negligent during the blood donation procedure, missing Ms. Cruz's vein, puncturing

an artery, and damaging her median and radial nerves.  She also alleged that the

phlebotomist was negligent because she failed to immediately stop the blood draw

and provided incorrect treatment after the procedure.  Ms. Cruz's only expert offered

opinions about the nature of her alleged injuries, but he offered no opinions as to the

standard of care the Red Cross and its phlebotomists must follow during a blood

donation procedure, or whether any deviation from that standard occurred during

Ms. Cruz's blood draw.  In fact, he testified that he thought "the act of drawing the

2

blood" resulted in some injury but that he had no "opinion specifically that there was a person who did this that in some way was negligent . . . in the manner [the blood draw] was done." *Id.*, vol. II, at 74.

After the close of discovery, the Red Cross moved for summary judgment, arguing that Ms. Cruz's failure to provide an expert opinion about the applicable standard of care was fatal to her claims because without an expert, she could not show either that it breached any duty of care or deviated from the applicable standard of care for performing blood donations or that its alleged negligence proximately caused her injuries. In opposing the motion, Ms. Cruz argued that the applicable standard of care was established by the Red Cross's internal standards for phlebotomy, which stated that blood is to be drawn from a vein, not an artery, and her expert opined that Ms. Cruz's blood was drawn from an artery.

The district court granted the motion, concluding that Ms. Cruz was required to present expert testimony to establish the applicable standard of care. The court explained that determining whether the phlebotomist's actions fell below the relevant standard of care and proximately caused Ms. Cruz's injuries is beyond the knowledge and experience of a lay jury and required the application of special experience and training.

## STANDARD OF REVIEW

Kansas law governs the substantive legal issues presented in this diversity action, but federal law governs the standard for granting summary judgment. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). A court

3

must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We review the district court's grant of summary judgment de novo, applying that same standard and viewing the evidence in the light most favorable to Ms. Cruz as the non-moving party.  *See Janny v. Gamez*, 8 F.4th 883, 898-99 (10th Cir. 2021).

## **DISCUSSION**

To recover for negligence under Kansas law, "the plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered."  *Nero v. Kan. State Univ.*, 861 P.2d 768, 772 (Kan. 1993) (internal quotation marks omitted).  "[N]egligence is never presumed" from injury.  *Nold ex rel. Nold v. Binyon*, 31 P.3d 274, 285 (Kan. 2001).

One purpose of the "requirement of expert testimony is to educate the fact finder as to otherwise alien terminology and technology and thus preclude his rendering judgment on something he knows nothing about."  *McKee ex rel. McKee v. City of Pleasanton*, 750 P.2d 1007, 1011 (Kan. 1988) (internal quotation marks omitted).  Thus, whether expert testimony is necessary to prove negligence depends on whether the fact finder can understand "the nature of the standard of care required of [the] defendant and the alleged deviation from the standard" without expert testimony.  *Gaumer v. Rossville Truck & Tractor Co.*, 202 P.3d 81, 84 (Kan. Ct. App.

4

2009), *aff'd on other grounds*, 257 P.3d 292 (Kan. 2011).[1]  When a plaintiff is attempting to establish negligence based on a departure from the reasonable standard of care in a profession that requires technical skill or training, expert testimony is required to establish such a departure.  *See McKee*, 750 P.2d at 1012-13 (standard-of-care expert required in negligence case against architect and contractor); *Bacon v. Mercy Hosp. of Ft. Scott*, 756 P.2d 416, 420, 424 (Kan. 1988) (standard-of-care and causation expert required in medical malpractice case); *Smart v. BNSF Ry. Co.*, 369 P.3d 966, 977 (Kan. Ct. App. 2016) (expert testimony required to prove railroad breached duty of care to electrician in negligence case involving workplace exposure to unreasonable ergonomic risk factors); *Gaumer*, 202 P.3d at 84 (standard-of-care expert required in negligence suit involving sale of complex farm machinery).

Ms. Cruz acknowledges that phlebotomy is a profession that requires technical skill and training, and she describes in detail the extensive training the Red Cross requires its phlebotomists to complete before performing blood draws.  But she contends expert testimony was unnecessary to establish the applicable standard of care because that standard is determined by the Red Cross's own policies and procedures for blood draws, which provide that blood should be drawn from a vein, not an artery.  Operating from the assumption that the Red Cross's internal policies and procedures establish the appropriate industry standard, Ms. Cruz maintains that

---

[1] We need not decide whether Ms. Cruz's claims were for ordinary negligence or medical malpractice, because classification of the claim does not determine whether expert testimony is required to establish the applicable standard of care.  *See Tudor v. Wheatland Nursing L.L.C.*, 214 P.3d 1217, 1221-22 (Kan. Ct. App. 2009).

its phlebotomist deviated from that standard by drawing blood from her artery. And, because the parties disputed the material fact whether the phlebotomist drew blood from an artery instead of a vein, Ms. Cruz maintains that the district court erred by granting summary judgment.

But the question here is not whether there was a genuine factual dispute about whether the Red Cross phlebotomist drew blood from Ms. Cruz's artery. Rather, the issue is whether Ms. Cruz showed she could give the jury the tools it needed to decide whether the phlebotomist deviated from the applicable standard of care in performing her blood draw. The district court concluded that she failed to do so, explaining that "[t]he phlebotomy process is extremely complex and involves language that is alien and technical." Aplt. App. at 238. Thus, "[t]his process is not within the general purview of a common juror's knowledge, and without expert testimony on the standard of care common to the phlebotomy process, a trier of fact would not be able to understand the nature of the standard of care" by which to measure Ms. Cruz's blood draw. *Id.* at 238-39.

We agree with the district court's determination that, under Kansas law, Ms. Cruz was required to offer expert opinion testimony to establish the applicable standard of care and that her failure to do so entitled the Red Cross to judgment as a matter of law. *See McKee*, 750 P.2d at 1012-13 (affirming summary judgment based on lack of expert architectural standard-of-care testimony); *Bacon*, 756 P.2d at 420, 424 (affirming summary judgment in medical malpractice case for lack of expert standard-of-

6

care testimony); *Gaumer*, 202 P.3d at 84 (affirming summary judgment for failure to provide expert testimony on standard of care applicable to seller of used hay baler).

We are not persuaded otherwise by her insistence that the Red Cross's internal policies and procedures established the applicable standard of care. She cites no authority, and we are aware of none, holding that a plaintiff can avoid her burden to produce expert standard-of-care testimony by relying on the defendant's alleged violation of its own policies and training materials. Such policies may be relevant in determining whether a defendant's employee was negligent in a particular case, but they do not establish a legal duty or the applicable industry-wide standard of care. *See McKee*, 750 P.2d at 1012 (holding that contractor's deviation from project plans and specifications did not "automatically render[] [it] liable for negligence" and that the plaintiff had to prove it was an unreasonable deviation from the applicable professional standard of care); *see also Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (recognizing that "a company's internal policies do not alter the applicable standard of care" but may be admitted to show negligence if "the jury is instructed that they are not admitted as legal standards of duty, but as evidence of the measure of caution which ought to be exercised in situations to which the [policies] apply" (internal quotation marks omitted)).

## <u>CONCLUSION</u>

We affirm the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge